Case 4.—ACTION BY NANNIE SUTTON'S ADM'R AGAINST GLENN C. WOOD AND OTHERS FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE BY SELLING HER POISON.—March 1.

## Sutton's Adm'r v. Wood, &c.

Appeal from Washington Circuit Court.

CHARLES PATTESON, Circuit Judge.

Judgment for defendants, and plaintiff appeals. Reversed.

Druggists—Negligence—Selling Poison—Causing Death — Failure to Observe Statute—Pleading—Improper Joinder—Striking Out—Election—Contributory Negligence— Instructions — Care in Buying and Selling Poison.

1. Druggist — Negligence — Selling Poison — Action for causing Death—Pleading Statute—In an action by the administrator against druggists for causing the death of his intestate by selling her strychnine for morphine, and which was administered to her by her nurse, without the knowledge of either herself or nurse that it was strychnine, it was error in the court to strike out of the petition the averment that the de-

fendant, Mudd, who sold and delivered the strychnine, "wrapped it in a paper without any mark or label on the outside of the package, designating the name of the poison contained therein, or the name of any antidote therefor; that at the time he, Mudd, was not a registered pharmacist, nor did he have a certificate of registration from the Kentucky State Board of Pharmacists authorizing him to sell or dispense drugs, medicines or poisons, nor was he at the time legally authorized by law to sell or dispense drugs, medicines or poisons; that at said time defendant Mudd did not make any inquiry as to the purpose for which said strychnine was to be used, nor did he satisfy himself that said poison was to to be used for legitimate purposes."

2. Statutory Regulation—Failure to Observe—Per se Negligence—The failure to observe a statutory regulation in the sale of poisonous drugs is per se a neglect of duty as well as neglect of care, and where special damage flows from it there exists, prima facie, a case of actionable negligence, and it is, therefore, a material and appropriate averment in setting out a cause of action to have charged a specific breach of the statute, although defendants may have been otherwise negligent in the transaction so as to have been liable to the plaintiff therefor.

3. Improper Joinder—Striking Out—Election—In an action by an administrator against druggists for causing the death of his intestate by selling her strychnine for morphine, it was error in the court to strike from the petition an allegation that "plaintiff's intestate was caused to suffer intense pain and anguish in consequence of having had the strychnine given to her." The proper practice was, by motion, to require the plaintiff to elect whether he would prosecute his action for his intestate's "death" or for her "pain and suffering."

4. Instructions—Contributory Negligence—Where death is caused by the negligent sale by a druggist of strychnine for morphine, which was negligently administered to the deceased by her nurse, it was error for the court to instruct the jury that "if they believe from the evidence that the decedent or her agents, or servants acting for or attending on her, negligently failed to open the package (containing the strychnine) or negligently failed to look at the label thereof, or negligently failed to discover the nature and warning of said label, or negligently failed to examine the character of the drug purchased and administered to the decedent, then, in law, the decedent is chargeable with contributory negligence, and in that event the law is for the defendant, and the jury should so find."

5. Negligence of Nurse—Concurring Negligence of Defendants—If decedent herself was so negligent in the matter, but for

which the injury to her would not have occurred, her estate ought not to recover, under the rule of contributory negligence prevailing in this State, but the fact that her nurse or attendant was negligent in administering the strychnine to her will not excuse the concurrent negligence of the druggists in furnishing the drug, whereby the wrong drug was provided. Both the servant and the druggists in such case are joint tort feasors, and both liable in damages.

6. Proper Instructions—The jury should have been instructed that if the defendant, Mudd, who was not a licensed pharmacist, sold to Allen Sutton for his mother, strychnine, in quantity of five grains or more, without inquiring the purpose for which it was intended, and without entering in a book kept for that purpose the name and residence of the buyer, the name of the article, the quantity sold, and the purpose for which it was intended, and that Nannie Sutton came to her death by reason of such failure, if any there was, the law is for the plaintiff; and the jury should so find.

7. Care in Furnishing Poison—A druggist and his customer are not under the same degree of care in the furnishing and taking of poison. The latter's duty is to exercise ordinary care for his own safety, while the former is required to exercise the highest degree of care for the safety of the public dealing with him.

W. C. McCHORD for appellant.

1. The first error which we contend the trial court committed was in striking from the petition, on motion of defendants, that portion thereof embraced in brackets and underscored by us that the court may at a glance see the portion striken out, which context is as follows:

"Defendant Mudd, instead of selling and furnishing morphine as called for, with gross carelessness and negligence sold and delivered to intestate's son a package containing one-eighth of an ounce, an unusual quantity, of strychnine, wrapped in a paper, without any mark or label on the outside of said package designating the name of the poison contained therein, or the name of any antidote for such poison; that at the time said strychnine was so sold and delivered by defendant, Herman Mudd, he was not a regular pharmacist, nor did he have a certificate of registration from the Kentucky State Board of Pharmacists, authorizing him to sell or dispense drugs, medicines or poisons. Plaintiff says that at said time defendant Mudd did not make any inquiry as to the purpose for which said strychnine was to be used, nor did he satisfy himself that said posion was to be used for a legitimate purpose."

2. By sec. 2690, Ky. Stats., it is made unlawful for any person

other than a registered and licensed pharmacist to vend at retail any drug or poison for medicinal use. Sec. 2622, Ky. Stats. provides that only those are licensed by the State Board of Pharmacists shall vend poisons, etc. This court in the case of South v. Middleton, 23 Ky. Law Rep., 2012, said in referring to the business of druggists, or vendors of drugs, poisons, etc.:

"That it is a business so hazardous, having to do so directly and frequently with the health and lives of so great a number of people, the highest degree of care and prudence for the safety of those dealing with such dealers is required."

For these reasons the Legislature of Kentucky has prescribed certain rules. for the government of those who sell drugs and poisons:

First—By requiring that none but persons who understand the nature and effect of these drugs shall sell them, and then those who are skilled in their profession shall not vend such articles until they have manifested their skill on an examination by a board of experts; organized by law for that special purpose, and a license issued by this board. The law goes still further in its effort to protect the people, by laying down strict rules which licensed pharmacists shall comply with before delivering poisons.

3. It was contended before the court below, and the court so held in striking from the petition the portion designated, that while Mudd may have been liable to prosecution by indictment for failing to comply with sec. 2630 of the statutes, and fined $10 as provided by this statute, yet the person injured could not recover damages sustained by reason of the violation of the law by Mudd.

In response to this argument we beg to call the attention of the court to section 466 of the Ky. Stats., which is directly in conflict with the position contended for by appellees. Said section is as follows: "A person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

### AUTHORITIES CITED.

South v. Middleton, 23 Ky. Law Rep., 2012; Ky. Stats., sec. 2630; Ky. Stats., sec. 466; City of Henderson v. Clayton, 22 Ky. Law Rep., 283; Monteith v. Kokomo Wood Co., Ind. Supreme Court, 58 L. R. A., 944; Wharton on Negligence, 443; Thompson on Negligence, 1st Ed., sec. 8, p. 508; Cooley on Torts, 654; Thompson on Negligence, sec. 211; Louisville Gas Company v. Gutenkuntz, 82 Ky., 438; Jones' Adm'r v. L. & N. R. R. Co., 82 Ky., 615; Shearman & Redfield on Negligence, sec. 25, 5th Ed.; 8th Am. & Eng. Ency. of Law, p. 569; 1st Sedgwick on Damages, sec. 734.

Sutton's Adm'r v. Wood, &c.

I. H. THURMAN and J. W. CLEMENTS for appellees,
W. E. SELECMAN of counsel.

1. The court is asked to reverse because the court below struck out a part of the petition setting out the statute regulating druggists' duties; the striking of the part as to suffering is not even questioned in argument.

In the first place, the matter was struck out, and thereupon ceased to be a part of the record herein, for it was not preserved in the bill of exceptions or otherwise, and this court can not consider it, and the instructions asked, based on it, must for this be taken as properly refused.

2. But on the merits the ruling of the court was proper. The suit is for a negligent selling of one poison when another was called for. This broad claim embraces everything that could come into the case, by violating every provision of the statute. The value of the life lost and vindictive damages was all that could be claimed or recovered in any event, and these were considered and passed on under the pleadings and instructions.

3. The conclusive fact is they sued for the negligent causing of a death, not by want of license, registery or questionings, but by giving strychnine when morphine was called for. This made the other stuff mere surplusage, properly stricken out. For these petty, violations the statute fixes the only penalty a $10 fine. If giving the wrong drug caused it, then the other matters did not; and if they did then the other act did not.

### AUTHORITIES CITED.

Ky. Stats. as to ground of recovery, sec. 6; Sup. Stat. (Act 1898) p. 63-4.

Failure to include stricken matter in bill of exceptions fatal. (Ency. Pldg. & Practice, vol. 21, p. 305; St. Louis, &c. v. Valirins, 56 Ind., 511; 23 Ky. Law Rep., 11; 23 Ky. Rep., 1291; 19 Ky. Law Rep., 155, 1800.)

OPINION BY JUDGE O'REAR—Reversing.

Appellees were druggists at Springfield. One of their firm (appellee Mudd) was not a registered pharmacist, nor did he know anything about the mixing of drugs, or technically of their nature and qualities. Mrs. Sutton, through her son, bought of appellees—so the petition charges—a bottle of morphine for medicinal purposes. But instead of delivering

morphine, it is claimed appellee Mudd wrapped up
and handed young Sutton a bottle of strychnine.
Some days later Mrs. Sutton, who was ill, and had
been taking morphine under the prescription of a
physician, called on her daughter, who was acting as
her nurse, to give her a dose of the morphine. With-
out unwrapping the bottle, as is claimed, the young
woman removed the stopper and administered what
she supposed was morphine; giving of the powder an
equivalent of the ordinary dose that had been pre-
scribed. In the course of an hour Mrs. Sutton was
dead, having in the meantime suffered horrible agony
from the effect of strychnine poisoning. It was not
discovered till after her burial that she had been given
the wrong drug. This suit, brought by her adminis-
trator against the druggists, charges that they care-
lessly and through gross negligence sold and furnished
to decedent the wrong drug—the strychnine—without
taking any of the precautions required of them by the
statutes, in consequence of which the strychnine came
to be administered to her, causing her great physical
pain and suffering and destroying her life.

The circuit court struck out of the petition certain
matter alleged, of which appellant complains. After
alleging the facts set out above, and stating that ap-
pellees delivered to intestate's son a package contain-
ing one-eighth of an ounce—an unusual quantity—of
strychnine, the petition contiuned: * * * "Wrap-
ped in a paper without any mark or label on the out-
side of said package designating the name of the
poison contained therein, or the name of any antidote
for such poison; that at the time said strychnine was
so sold and delivered by defendant, Herman Mudd,
he was not a registered pharmacist, nor did he have a
certificate of registration from the Kentucky State
Board of Pharmacists authorizing him to sell or dis-

pense drugs, medicines or poisons, as authorized by law, nor was he at the time legally authorized to sell or dispense drugs, medicines or poisons. Plaintiff says that at said time defendant Mudd did not make any inquiry as to the purpose for which said strychnine was to be used, nor did he satisfy himself that such poison was to be used for legitimate purposes." The averment just quoted was stricken out of the petition on motion of defendants, and over the plaintiff's objection. The basis of the court's ruling was doubtless that the rejected matter was evidential, merely, and not properly pleadable. It was supposed that the averment of negligence covered the particular failures specifically set forth, if, indeed, the court deemed them as relevant at all. Whether the stricken matter was relevant depends on whether they show a cause of action, taken in connection with the other averments of the petition. Section 2630 Ky. St., 1903, is as follows: "No person shall sell at retail any poisons, except as herein provided, without affixing to the bottle, box, vessel or package containing same, a label printed or plainly written, containing the name of the article, the word 'Poison,' and the name and place of business of the seller, with the common name of two or more readily accessible antidotes, nor shall he deliver poison to any person without satisfying himself that such poison is to be used for legitimate purposes. A poison in the meaning of this act shall be any drug, chemical or preparation, which according to standard works on medicine or materia medica, is liable to be destructive to adult human life in quantities of sixty grains or less. It shall be the further duty of any one selling or dispensing poisons, which are known to be destructive to adult human life in quantities of five grains or less, before delivering them, to enter in a book kept for that purpose the

name of the seller, the name and residence of the buyer, the name of the article, the quantity sold or disposed of, and the purposes for which it is intended," etc. Other sections (2631, 2632) prohibit all persons not registered pharmacists or physicians from selling drugs or medicines, except proprietary or patent medicines, and nonpoisonous medicines, which may be sold by country stores in small places or rural districts. These sections, enacted under the police power of the State, were designed for the protection of the public health. Their breach is denounced as a crime punishable by fine. But this punishment may be administered whether any damage is done by the act or not. When, however, damage results from the neglect, the fact that it may also be punished as an offense against the criminal law will not prevent one specially damaged by it from recovering for it. Indeed, such right of recovery is specifically granted by statute. (Section 466, Ky. St., 1903.) Before the statute above quoted an action would lie against a druggist who negligently furnished a customer a poisonous drug, instead of some other and different one which had been bought of him, not calling the customer's attention to the substitution, where damage resulted from the act. By the statutes regulating the practice of pharmacy a comprehensive system has been devised to guard the public against incompetent, inexpert handlers of subtle, dangerous drugs, designed and sold to be administered to people. Great care has been observed in prescribing rules which, in their application, are believed to minimize the dangers incident to this business. As the legislation was to enchance the public's protection, the duties imposed on the druggists were intended as statutory tests of care, in so far as the statutes went. Their nonobservance is per se neglect of duty, as well as

neglect of care. When special damage flows from it, there exists, prima facie, a case of actionable negligence. Speaking of this class of actions, this court, in Henderson v. Clayton, 22 Ky. Law Rep., 283, 57 S. W., 1, 53 L. R. A., 145, said: "From time immemorial, where a statutory duty for the protection of individuals has been violated, an action at common law may be maintained." In Monteith v. Kokomo Wood Enameling Co., 64 N. E., 610, 58 L. R. A., 944, the Supreme Court of Indiana approved this rule, deduced from English cases, and followed by a considerable number of American cases as well: "Where a statute of public character prescribes in regard to a class of persons the precautions for the health or safety of a class of persons having to do with them, the neglect of such a statutory precaution gives a right of action to any person within the scope of the intended benefit who by reason of the neglect suffers damages of the kind intended to be provided against." (Thompson on Negligence, section 10, p. 12.) It was, therefore, a material and appropriate averment, in the setting out of this cause of action, for the plaintiff to have charged a specific breach of the statute quoted although defendants might have been otherwise negligent in the transaction, so as to have been liable to the plaintiffs therefor. The action of the court in striking out was erroneous.

Another averment of the petition stricken out on motion of the defendants was the statement that plaintiff's intestate was caused to suffer intense pains and anguish, as a consequence of having had the strychnine given to her. This action of the court was presumably upon the idea that causes of action for physical suffering and for death could not be joined. But each being sufficiently pleaded, it was not the province of the defendant to select which of them he would have

stricken out. The proper practice was by motion to require the plaintiff to elect. The court's action in the ruling was erroneous, and under the facts of this case was, in our opinion, prejudicial.

The instructions to the jury, while submitting unobjectionably the question of defendant's negligence, aside from their statutory duties omitted, were erroneous in not also submitting the latter phase of the case. The jury should have been told that if defendant Mudd, who was not a licensed pharmacist, sold to Allen Sutton, for his mother, strychnine, in quantity of five grains or more, without inquiring the purpose for which it was intended, and without entering in a book kept for that purpose the name of the seller, the name and residence of the buyer, the name of the article, the quantity sold, and the purpose for which it was intended and without affixing to the bottle a label printed or plainly written, containing the name of the article, the word "poison," and the name and place of business of the seller, with the common name of two or more readily accessible antidotes, and that Nannie Sutton came to her death by reason of such failure, if any there was, the law is for the plaintiff, and the jury should so find. The measure of damages and the law as to punitive damages were correctly stated to the jury.

The instructions given on contributory negligence are marked "2" and "4," respectively, and are as follows:

"(2.) The court instructs the jury that it was the duty of the decedent, Nannie Sutton, and of her agents and servants attendant upon her, to use ordinary care to discover the true and real contents of the bottle from which the posion is claimed to have been administered; and if the jury believe from the evidence the said Nannie Sutton, or her agents or servants act-

ing for and attendant upon her, negligently failed to open the package delivered to Allen Sutton for the said decedent, or negligently failed to look at the label thereof, or negligently failed to discover the nature istered to the said decedent, or negligently failed to discover the nature of same, then, in law, the decedent is chargeable with contributory negligence, and in that event the law is for the defendants, and so the jury should find.·

"(4.) 'Contributory negligence,' as used in these instructions, means such negligence upon the part of decedent, Nannie Sutton, or her agents or servants acting for her, as that, but for same, her death would not have occurred."

If Nannie Sutton was herself so negligent in the matter, but for which the injury to her would not have occurred, it seems clear that her estate ought not to recover, under the familiar rule governing contributory negligence prevailing in this State. But we do not understand, though, that Mrs. Sutton had no right of action because of defendants' negligence if somebody else's negligence than her own concurred in producing her injury. We understand the law to be just the contrary. If Mrs. Sutton's nurse or servant negligently administered the wrong drug or poison, inflicting death, the servant would be liable to the decedent's estate in damages. This, however, would not excuse the druggist who had also been negligent in furnishing the drug, whereby the wrong drug was provided. Both the druggist and the servant might be liable. If the agent neglects his duty to the principal, inflicting an injury on the latter, he is liable, just as the negligent master is who inflicts an injury on his servant. If the master and another by their joint or concurring negligence injure the servant, both tort feasors are liable in damages. Upon the same prin-

ciple, if the servant's negligence concurs with a stranger's in injuring the master, both should be liable. There is no merit in the proposition that the stranger is not liable for his negligence because the injured person's servant was also negligent, and aided thereby in inflicting the injury. The doctrine of respondeat superior does not work that way. It makes the master liable for the servant's negligence towards others, but does not excuse the servant from his duty toward the master.

It is not true, either, as stated in the sixth instruction, that the druggist and the customer are under the same degree of care in the furnishing and taking of the drug. The fact alone that one is prohibited from acting in the matter at all, except under a license, and after a technical training, evinces that there is a difference, and a necessary one, between the care to be observed by the pharmacist and by his customer. The latter's duty is to exercise ordinary care for his own safety; the former's, to exercise the highest degree of care for the safety of the public dealing with him.

The judgment must be reversed, and the cause remanded for a new trial consistent herewith.

Petition for rehearing by appellee overruled.

---

Case 5.—ACTION BY JAMES T. AVRITT, &c., AGAINST THE CUMBERLAND TELEPHONE & TELEGRAPH CO., &c., FOR DAMAGES TO PLAINTIFFS LAND IN BUILDING A TELEPHONE LINE ON THE PUBLIC HIGHWAY WHICH HAD BEEN GRANTED BY THE PLAINTIFFS' ANCESTOR.— March 1.