Case 91.—ACTION BY GUS ANDRICUS' ADMINISTRATOR
AGAINST THE PINEVILLE COAL CO. FOR DAMAGES FOR
CAUSING THE DEATH OF PLAINTIF'S INTESTATE.—
January 11.

## Andricus' Adm'r v. Pineville Coal Co.

Appeal from Bell Circuit Court.

M. J. Moss Circuit Judge.

Judgment for defendant. Plaintiff appeals. Reversed.

1. Master and Servant—Negligence of Master—Safe Place to
Work—It is actionable negligence for the operators of a mine
to suffer the mine to be unfit for use because of lack of ven-
tilation, and to use it in that condition.

2. Same—Duty to Warn Servants—It is negligence for the opera-
tors of a mine not to apprise the miners working in the mine
of the insufficiency of ventilation of the mine.

3. Same—Contributory Negligence—Reliance of Master's Assur-
ances—Unless a danger incident to the employment is known
to the servant or is an obvious danger, he may rely upon
the implied assurance and superior knowledge of his em-
ployer that the premises are reasonably safe for the pur-
poses for which they are being used.

4. Depositions—Objections—Necessity of filing Exceptions—Civ.
Code Prac., sec. 585, requires depositions to be filed with
the papers of the case before the commencement of the trial.
Sec. 586 requires exceptions to depositions to be in writing,
filed with the papers of the case, and noted on the record.
Sec. 587 requires exceptions other than to the competency
of the witness or to the relevancy or competency of his tes-
timony to be filed and noted on the record before the com-
mencement of the trial. Held—That an objection to the read-
ing of a deposition which was filed in the record of the
case was properly overruled, where no exception to the
deposition was filed.

5. Same—Depositions Taken in Other Case—Where two actions
were pending against the same employer for the death of
different servants, and the same person was administrator of
both decedents, and the parties were represented by the same

Andricus' Adm'r v. Pineville Coal Co.

counsel in each case, and the same negligence and the same cause of death were relied on as a basis of recovery in each case, depositions taken in one case relevant to the other could be read in the latter, if filed therein before the trial.

6. Master and Servant—Injuries to Servant—Actions—Evidence—In an action for the death of a miner, caused by the negligent and insufficient ventilation of the mine, evidence of the unsafe condition of the mine from the same cause a few months before the death of plaintiff's intestate was relevant to show that the plan of ventilation was defective and that such fact was known to the mine operators.

7. Same—Statutory Regulations—Power to Regulate—It is within the police power of the State to regulate, or to require the employer to regulate, the conditions of an extra hazardous business in which a large number of persons are employed, so as to safeguard the lives and health of the workmen; and to that end provision for an inspection of the premises and appliances of the business may be prescribed, and the owner or operator may be required to remedy defects, or the workmen may be notified thereof, so that they may keep away from or protect themselves in the defective premises.

8. Same—Negligence of Master—Disregard of Statute—Ky. Stas. 1903, secs. 2722-2733a, create the office of inspector of mines, define the duties of the inspector, require mine owners or operators to provide suitable and efficient ventilation for their mines, empower the mine inspector to visit and inspect mines and to notify the mine owner to remedy defects which he finds therein, and prescribe penalties for the failure of the mine owner to comply with the requirements of the law. Sec. 466 provides that a person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture is also imposed for such violation. Held—That the failure of a mine owner to adopt the statutory safeguards for the safety of his employes is per se an act of negligence toward such employes.

9. Evidence—Official Reports—Certified Copies—Under Ky. Stats. 1903, sec. 2725, requiring the inspector of mines to keep a record of inspections made by him, and making a certified copy of his report of the inspection of any mine admissible in evidence and prima facie evidence of the truth of recitals therein contained, a certified copy of a report of inspection made by the inspector of mines is admissible, in an action for injuries to a miner, to establish prima facie the existence of defective conditions of the mine which the report states to exist.

10. Constitutional Law—Due Process of Law—Statutes Affecting
Evidence—It is competent for the Legislature to place the
burden of proof in actions by making official determinations
or certifications prima facie proof of the facts determined or
certified to, and such legislation is not subject to the ob-
jection of disposing of property or other rights without a
hearing.

11. Master and Servant—Injuries to Servant—Actions—Evidence—
Sufficiency—In an action for the death of a miner, evidence,
Held—Sufficient to support a finding that the death of plain-
tiff's decedent was caused by the defective and insufficient
ventilation of the mine.

WELLER & POINTS for appellant.

1. The glaring outrage upon the law, and the rights of a
litigant, as has been perpetrated in this case, needs no serious
discussion, and hardly deserves to be dignified with a brief.

2. The ruling of the court, both on the testimony and in the
giving of instructions, are so manifestly wrong that a mere
glance at the record ought to be sufficient to convince the court
as to the proper judgment in the case.

3. It it clearly shown that the appellee, at the time appellant's
intestate lost his life, was operating, or pretending to operate,
its mines in open violation of sec. 2731, of the Ky. Stats., and
in the face of the condemnation of the mines on the part of
the mine inspector of the State for want of sufficient air.

4. Appellant's intestate was never apprised of the condition
of the mines as to ventilation or otherwise, and was permitted
by the appellee to enter a veritable death trap without the slight-
est warning of the dangers that lurked around in the mines at
the time. In consequence of this appellant's intestate lost his
life the first day he entered the mine.

5. The court, however, in total disregard of sec. 2725, of the
statute, refused to allow any report of the mine inspector as to
the condition of the mine to be read to the jury, and on the
completion of plaintiff's testimony, took the case away from the
jury, and decided that as a matter of law, plaintiff was entitled
to no relief.

AUTHORITIES CITED.

Ky. Stas., secs. 2725, 2731; Godfrey v. Beattyville Coal Co., 19
Ky. Law Rep., 501.

LOGAN & JEFFRIES for appellee.

Andricus' Adm'r v. Pineville Coal Co.

1. The deposition of the witness, A. L. Doran, introduced and read on the trial by appellant, was taken and given for the purpose of being read on the trial of another case pending in the Bell Circuit Court, and this said deposition of the witness, Doran, was never, by any agreement of the parties, or order of court, made part of the record in this case, but, upon the contrary, the use of it as evidence herein, was objected and excepted to when same was offered in evidence on the trial of the case.

2. Although contributory neglect by the deceased will not relieve from responsibility the party by whose willful neglect the life of deceased has been destroyed, yet, if the injury received by the deceased was caused wholly by his own negligence, no action can be maintained.

3. In an action to recover damages for an injury arising from defendant's negligence, the burden of showing neglect is upon the plaintiff; and if the evidence shows that the injury may have resulted from any one of two causes, only one of which was due to defendant's negligence, the inference that the injury resulted from the one cause is no stronger than that it resulted from the other, the plaintiff has failed to make out his case, and it is incompetent for the court to leave the question to the jury.

### AUTHORITIES CITED.

82 Ky., 610, Jones' Adm'r v. L. & N. Railroad Co,; 91 Ky., 526, Hughes v. Cincinnati, &c., Railroad Co.; 105 Ky., 131, at page 156, Louisville Gas Co. v. Kaufman, Straus & Co., &c.

### AUTHORITIES QUOTED.

Addison on Torts, 7; 8 Com. Bench, N. S., 568, Cotton v. Wood: Thompson on Negligence p. 364; 97 N. Y., 259, Hayes v. Ferry Railroad Co.; 59 N. Y., 357, Baulec v. New York, &c., Railroad Co.; 2 Amer. & Eng. R. R. Cases, 158, Philadelphia, &c., Railroad Co. v. Schertle; 14 Ky. Law Rep., 579, Wintuska's Adm'r v. L. & N. R. R. Co.; 133 N. Y., Grant v. Railroad Co.

OPINION BY JUDGE O'REAR—Reversing.

Gus Andricus, a coal miner, was overcome by foul air and gases in appellee's mine, and died therefrom November 2, 1902. This suit is against the mine owner to recover damages to his estate, on account of his death, charging that the mine owner

negligently and knowingly failed to provide proper or sufficient ventilation in its mine, and put decedent to work therein without notifying him of that defective condition.   Andricus and his companion were Greeks; the former being but little acquainted with the English language.   They were miners of some experience, however, though they had not worked in this mine till the day on which they lost their lives. They were employed to drive entries, using a machine to drill holes in the solid wall of coal and then blasting it out with charges of dynamite and powder. The plan being operated in that mine was to shoot the coal "on the solid," by which is meant blasting the coal by putting holes straight into the wall or face of the coal and using therein large charges of dynamite or powder.   When the coal is cut under before blasting, a much smaller charge is required to blow it down, which is called "shooting on the free."   The point where Andricus was put to work was at the end of the first left off the second left off the main entry. It was about 1,700 feet from the portal or mouth of the main entry. It involved two abrupt turns, each to the left.   A diagram of the mine shows that it was well-nigh impossible for fresh air to get up to the point where the Greeks were working, either by natural or artificial circulation, except by very slow process.   This fact was so well known that the custom at that mine was to shoot only just before quitting time in the afternoon, or say 4:30 p. m., and then the miners were not to return to their work till next morning.   It took from 14 to 16 hours for the entries and rooms where the blasting was done to clear of smoke and fumes engendered by the burnt dynamite and powder.   This was because the ventilation was so deficient. There was not current enough to the air to

carry it out in less time. Had the mine been proper-
ly ventilated, the miners could have returned to work
after shooting within a few minutes to an hour. This
statement is made upon the only evidence put into
the record, the technical detail of which it is deemed
unnecessary to set forth at length in this opinion.

In addition to the testimony of the witnesses, ap-
pellant offered certified copies of notices given by
the State mine inspector to appellee on June 24, 1902,
and on October 4, 1902, condemning the ventilation
of the mine, and particularly calling attention to the
condition of the second left. The State mine inspec-
tor required, by these notices, that the owners remedy
the defects in ventilation as therein pointed out and
specified. The court rejected these copies. Nothing
was done, so far as the record shows, to comply with
the State mine inspector's requirements in the matter.
It was admitted that Andricus was killed by foul
gases in the mine. The defense was that the condi-
tion was not because of appellee's negligence, but was
brought about by Andricus' own negligence in going
back to work too soon after shooting the coal, and
before the gas caused by the shot could be dissipated
by ventilation or otherwise. Appellee's mine fore-
man testified as a witness for appellant. He, too,
had been employed at that mine only that day—the
day of the death of the two Greeks. He had not had
time to learn, or had not learned, of the true condi-
tion of the mine, and said nothing whatever to the
decedent and his companion about its condition. The
next day the foreman did inspect it at that point, and
testified that the ventilation was entirely insufficient
and the air was bad. Upon this evidence, the circuit
court granted a motion for nonsuit, and peremptorily
instructed the jury to find a verdict for appellee.

If the testimony of A. L. Doran, appellee's mine foreman above alluded to, and which was embodied in his deposition read in the case, was properly admitted, the motion for a peremptory instruction should have been overruled.  His testimony alone shows that the mine was unfit, because of lack of ventilation, to be used.  Appellee knew of it, and, whether it did or not, it was bound to take notice of it, and will be treated, at the suit of an employe injured or killed by such failure to provide a reasonably safe place to work, as if it in fact knew of it.  It was actionable negligence to suffer the mine to be in that condition when in use, and was furthermore negligence in the operators to put men to work in it without apprising them of its condition; for, unless the danger was known to the laborer, or was an obvious one, necessarily falling under the workman's attention in the course of his employment, he was not bound to look for it, but might rely upon the implied assurance and superior means of knowledge of his employer that the premises were reasonably safe and fit for the purposes for which they were being used.  (Pfisterer v. Peter & Co., 117 Ky., 501 78 S. W., 450, 25 Ky. Law Rep., 1605; Wilson v. Chess-Wymond Co., 117 Ky., 567, 78 S. W., 453, 25 Ky. Law Rep., 1655.)  After appellant had shown by evidence that it was unfit and unsafe, it devolved upon appellee to prove that the condition was known to the laborer, or was such that the very matter of his employment involved his learning the fact.    Whether the mine was sufficiently ventilated does not seem to be determinable necessarily without either a knowledge of the system of its ventilation and knowledge of how it worked, or till after opportunity for learning the fact by observation of its practical working.

The deposition of Doran was taken in view of his contemplated emigration. The notice was to take his deposition in this case. It appears that there was another suit pending at the same time and in the same court by the personal representative of Mike Staples, the fellow workman of decedent in this case, and who lost his life at the same time and from the same cause. The caption of the deposition shows that it was taken in Staples' case. But it says it was taken "pursuant to attached notice," which was styled for and given in this case. The clerk's indorsement shows that the deposition was filed. Presumably it was filed in this record, or it could not have been used on the trial at all, save by consent; nothing appearing to the contrary. (Section 585, Civil Code Practice.) When appellant offered to read this deposition on the trial, appellee objected; but the court overruled the objection. A deposition taken or filed in an action, to be read as evidence on the trial, must be excepted to before the trial begins, if objection to it is based on any ground that goes to its exclusion. (Section 587, Civil Code Practice.) Nor can an exception to a deposition be made otherwise than in writing, filed with the papers of the case and noted on the record. (Section 586, Civil Code Practice.) As there was no exception filed, the objection to the reading of the deposition was properly overruled, in any event. The same person was administrator of both decedents, the the same cause of death was relied on, and the same negligence sued for in each case. The same defendant was sued in each case. The parties appear to be represented by the same counsel in each case. Depositions taken in one case, that are relevant in the other, may be read in the other case, if filed therein before the trial. (Kerr v. Gibson, 8 Bush, 129.)

Probably the most important matter of practice arising in the case was the action of the circuit court in refusing to admit the certified copies of the notices given by the State Mine Inspector to appellee concerning the condition of the mine shortly before occurrence sued for. We are not advised of the basis of the court's ruling. But we deem the matter of enough importance and novelty to treat it in all the aspects in which it has occurred to us. If it be claimed that evidence of an unsafe condition of the mine, in June or October does not tend to prove that the condition was unsafe in November, however the point might be decided, it would not control; for there is evidence that the condition is unsafe on 2d of November from a certain cause, and it is a relevant fact to be proved that that condition existed October 4th, previous, as well as on June 24th, previous. The precise fault to be shown is insufficient ventilation, a defect of plan. It is a relevant fact, if not a necessary one, in certain aspects of the case, to show that the plan was defective, and had been in operation and tested long enough to have demonstrated the fact, and therefore was actually known to the employers.

Perhaps the objection went to the very root of the matter, and was based upon the assumption that the State Mine Inspector's examination and report could not of itself establish the fact; that the report or notice was, indeed, only hearsay evidence, and not receivable in an action of one injured by the condition found by the report as against the mine owner; or that, at least, as might be assumed from a reading of the statute, it was alone a police regulation, a breach of which was indictable, and on the trial of which, by the terms of the statute, the inspector's

report and inspection might have been received as evidence, and, indeed, were required to have been shown, before the penalties fixed by the statute could be imposed for a failure to comply with them. Where a large number of persons are employed in an extra-hazardous business, it is undoubtedly within the police power of the State to regulate, or to require the employer to regulate, the conditions so as to safe-guard the lives and health of the laborers. To that end, it is competent, and, indeed, may be necessary, that suitable provision should be made for inspection of the premises and appliances, in order to compel a compliance with the statute, as well as to punish its breaches. One object of such inspection is to ascertain the fact whether the law is being observed and whether its requirements have been complied with. This is on behalf of the public; not only the State as a corporate and sovereign being, but of all the public who are concerned in knowing the fact, for the information and guidance peculiarly of those who are the direct objects of the statute's protection. For the primary policy of the statute is to prevent injury to the class named, either in their health or loss of their lives. This may be done by requiring the owner or operator to remedy defects, as well as by giving such notice to the laborers that they may keep away from or otherwise protect themselves in the defective premises.

But the statute goes further, and provides a punishment for those who violate it. The main object of the punishment is, of course, to coerce its observance of the regulation by the person punished and by others witnessing his example. But all preventive statutes do not entirely prevent the mischief at which they are aimed. This is anticipated in the pro-

vision for a penalty for the breach. The penalty im-
posed by the statute is not for redress of the injury
done, but is to punish the wrong of failing to observe
the law. Whether or not the fine be imposed is a mat-
ter that concerns the body politic, but is wholly be-
side the question of injury inflicted and the responsi-
bility of the wrongdoer to the injured party for it.
Whatever personal liability accrues from a specific
act of negligence, although such negligent act may
be embraced in the terms of the statute as a thing
prohibited, remains unaffected by the statute. In so
far as the statute creates new duties from the mine
owner or operator to the laborer, they attach upon
the assumption of that relation by the parties, and
for a breach of such duties, where injury results
to the laborer, an action will lie therefor. The
statute requires the owner or operator of a coal mine
to adopt certain methods for the safety of his em-
ployes. One operating such a mine now assumes
to his employes that he will do so, and his failure is
a breach of the implied undertaking, and is per se
an act of negligence toward the employe, although
before the statute it may or may not have been
deemed negligence of itself. One effect of the stat-
ute is the erection of a legislative standard of duty
or care, in addition to that imposed previously by
the common law. A breach of one is as clearly and
as necessarily a violation of the laborer's rights as
would be a breach of the other. (Sutton's Adm'r v.
Wood, 120 Ky., 23, 85 S. W., 201, 27 Ky. Law Rep.,
412; Monteith v. Kokomo Wood Enameling Co.
[Ind.], 64 N. E., 610, 58 L. R. A., 944; Thompson on
Negligence, sec. 10; Henderson v. Clayton, 57 S. W.,
1, 22 Ky. Law Rep., 283, 53 L. R. A., 145.)

Besides, a statute of this State provides: ''A per-
son injured by the violation of any statute may re-

cover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed." (Section 466, Ky. Stats. 1903.) Chapter 88 Ky. Stats. 1903 (section 2722 to 2733a, inclusive), creates the office of inspector of mines. It defines his duties with respect to examination of the condition of coal mines operated in this State employing more than five men. By section 2731, Ky. Stats. 1903, it is made the duty of mine owners or operators to provide suitable and efficient ventilation of their mines. Section 2724, Ky Stats. 1903, empowers the mine inspector to visit and inspect the mines, and, if found insecure or lacking in ventilation, so as to endanger the health or safety of the persons employed therein, it is made his duty to so notify the mine owner or operator, and require him to remedy the defects pointed out. Certain penalties and proceedings are allowed for the failure of the mine owner or operator to comply with the requirements which affect the general public. Section 2725, Ky. Stats. 1903, provides, in addition: "The inspector of mines * * * shall keep a record of all the inspection made by him, and shall furnish a certified copy of his report of the inspection of any mine inspected by him to the Commonwealth's Attorney of the district in which the mine is situated, on application therefor, which copy shall be admissible in evidence in any court in this Commonwealth, and shall be prima facie evidence of the truth of recitals therein contained." This section means, not only that the copy furnished to the Commonwealth's Attorney shall be receivable as evidence, but that all copies of such reports made and certified by the inspector of mines, shall constitute such evidence. Certain officials are required

by law to certify to certain facts of concern to the public or members thereof, of which records are made and kept. When so made, they establish the existence of the conditions certified to, and are. binding as to their verity till impeached in the manner allowed by law. In this instance they become established prima facie only, and may be rebutted. (Godfrey v. Beattyville Coal Co., 101 Ky., 339, 19 Ky. Law Rep., 501, 41 S. W., 10.) This rule does not deprive the coal company of a trial, nor dispose of its property or other rights without a hearing and day in court. It is competent for the Legislature to place the burden of proof in actions, by making official determination or certification prima facie true.

The final contention is that there was not proof certain that decedent came to his death from the cause charged, and for aught that the record discloses he may have died from his own negligence or other undisclosed cause. The answer expressly admits that decedent was overcome by gas in the mine at the time and place charged and while in appellee's service. But it pleads that it was his own negligence, instead of appellee's, that caused it. On this plea of contributory negligence, if it be deemed such, there was no proof. The admission, coupled with the proven facts, and particularly in connection with the mine inspector's notices, are enough to have supported a verdict for appellant on the specific charge sued on.

The court is of opinion that the circuit court erred in excluding the copies of the mine inspector's notices, as well as erred further in giving the peremptory instruction in the case.

Wherefore, the judgment is reversed, and the cause remanded for a new trial under proceedings consistent herewith.