## Stevenson v. Illinois Central Railroad Company.

(Decided February 24, 1914.)

### Appeal from Grayson Circuit Court.

1. Railroads—Operation—Accidents at Crossings—Actions for Injuries—Instructions.—In an action against a railroad company for injuries, where plaintiff's claim was that he was caused to fall against a moving train passing over a crossing, by the giving way of a bank of snow negligently thrown upon said crossing by the servants of the railroad company; and where defendant's claim is that plaintiff was injured in an attempt to board the train passing over said crossing, the instructions reviewed and held not prejudicial, (1) in the use of the word "negligently" therein; (2) in the use of the words "authorized agents" therein; and (3) in the use of the phrase "while exercising ordinary care for his own safety."

2. Railroads—Operation—Accidents at Crossings—Lights, Signals and Look-outs from Trains or Cars.—In an action against a

railroad company for injuries, where plaintiff's claim was that he was caused to fall against, a moving train passing over a crossing, by the giving way of a bank of snow negligently thrown upon said crossing by servants of the railroad company, and where defendants claim was that plaintiff was injured in an attempt to board such moving train, the duty to maintain a look-out was not involved; for if plaintiff's contention as to the cause of the injury be true, he may recover regardless of whether proper look-out was maintained or not; while if he was a trespasser, as the railroad company contends, it owed him no look-out duty; its only duty in that case being to use ordinary care to prevent injury after the discovery of his peril. Generally speaking, the look-out duty imposed on railroads has reference to persons encountering a moving train in the direct path of its motion, not in its midst nor upon its side.

8. Evidence—Former Evidence—Deposition Taken in Former Action.—Where plaintiff instituted an action against a railroad company and two of its servants, took the deposition of a certain witness, and dismissed that action, and brought a second action against the railroad company and another of its servants, upon the trial of which plaintiff offered to read the deposition taken in the former action, as evidence against the company only, without filing the same among the papers in the second action before the commencement of the trial, the deposition is inadmissible for failure to conform to Section 585, Civil Code.

J. C. GRAHAM and O'DOHERTY & YONTS for appellant.

TRABUE, DOOLAN & COX, L. A. FAUREST, ROBERT T. CALDWELL and R. D. FLETCHER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

Charles W. Stevenson sued the Illinois Central Railroad Company, the Chicago, St. Louis & New Orleans Railroad Company and Robert Duncan to recover damages for injuries that necessitated the amputation of his leg. Upon the trial of the case, the plaintiff, on his motion, dismissed his action against the second-named railroad company; and the jury returned a verdict in favor of the other two defendants; and plaintiff appeals.

Plaintiff received his injuries on February 19, 1910. At that time a spur track extended from the main line of the Illinois Central Railroad Company to the plant of B. F. Avery & Sons, then in process of construction, near the city limits of Louisville. This spur track crossed the county road, called Seventh Street Road, a short distance beyond the city limits. The Avery plant lay im-

mediately east of this crossing, while the main line of the railroad was some distance to the west thereof.

One of defendant company's switch engines had some switching to do at the Avery plant, and this engine, headed east, came along on the spur track, pushing two freight cars in front of it and stopped just west of where this spur track crossed over the Seventh Street Road. The conductor sent ahead to the crossing a couple of men to clean out the snow from the space between the rails. upon, which the wheels of the train ran and the guard rails, and also to clean out the snow from a switch that lay just east of the crossing. After this work was com-. pleted, the engine and cars were run over the crossing and into the Avery plant, and there coupled on to nine additional cars. The engine was then backed out of the plant and over the crossing of the Seventh Street Road, pulling the eleven cars, at a speed of three or four miles per hour.

Plaintiff, a young man about eighteen years of age, left his brother's home on the Seventh Street Road, in company with a companion named Virgil Miller, and coming north on said Seventh Street Road, had reached the south side of the crossing in question.

After the engine and several of the cars had passed over the crossing, the plaintiff either fell against a car, as he contends, and in order to avert injury to himself caught to the ladder on the car, and was carried several feet and received the injuries complained of; or, he voluntarily, for the purpose of riding on the train, attempted to get on the car, as defendant company contends, and was thrown under it and injured.

The evidence bearing on the main issues is sharply, conflicting. Plaintiff himself, testified as follows: "Well, Virgil Miller and I started from home, and when we got to the railroad track, there was a switch engine pulling some cars out of the Avery plant, and when I got there, I walked up in the distance of three or four feet of the train. And there was a snow bank there, that the snow had blown and covered over with snow, and they had shovelled it up off of the track; and it was loose, and gave way under my feet, and throwed me just a tilt toward the train; and in falling, I grabbed hold of some part of the car, ladder or something (I didn't have time to tell) and then it jerked me a little distance the side

of the road, eight or ten feet, and throwed me against a post; and this post broke my hold and throwed me down under the train, and then it dragged me by my leg a distance of sixty or seventy feet, and then it run up on my leg."

Miller, plaintiff's companion, testified that when they got to the crossing, there was a cut of cars coming down, and they stopped; that plaintiff stopped about three or four feet from the track, and the snow gave way from under him, and he slipped and caught some part of the train to keep from falling against it; and it threw him against the post; and that threw him under the train.

A witness named Dipholz testified that he was going to the city in a wagon, and came to this crossing as the train was passing over it; that he saw appellant pass his wagon right in front of him and stumble on the snow, and as he stumbled, he went right on to the post. On cross-examination, this witness testified as follows: "Q. Did he appear to be going in the direction of the train when he stumbled? A. I don't know. Q. At any rate, he was walking—he was not standing still? A. I believe he stopped when he stumbled. Q. But he was walking when he stumbled? A. Yes."

It was shown by defendant company that when plaintiff was injured, he was first carried to a shanty nearby, and while waiting there for a conveyance, he stated to two members of the switching crew that he was trying to get on the car to ride over to the plant of the North Vernon Lumber Company.

Plaintiff, himself, testified that he was on his way to the office of that company, with his companion, Virgil Miller, for the purpose of collecting their wages; but that it was their intention to go first to Miller's home, and from there to the lumber company's office; and that they were merely waiting for the cars to pass over the crossing so that they might continue north on Seventh Street Road on their way to Miller's home. It was shown in evidence that the plant of the North Vernon Lumber Company was on defendant company's line; and that the switch engine mentioned, in going from the Avery plant back to the yards of the railroad company would pass by the plant of the said lumber company.

It was shown by the conductor of the switching crew that plaintiff was standing at the crossing when they

arrived there; and three others of the crew testified that they saw him standing there while the snow was being cleaned out from between the rails. During all this time, the crossing was unobstructed; and after the snow was cleaned out and the train had proceeded over the crossing and into the Avery plant, the crossing was again unobstructed. However, plaintiff's brother testified that plaintiff left his home about ten or fifteen minutes before he received the news of plaintiff's injury; and if this be true, plaintiff could not have been at the crossing during the time testified to by these members of the switching crew, as the work of cleaning the tracks consumed about forty minutes.

As to the embankment of snow, plaintiff's evidence tended to show that the bank of snow which he claimed gave way and threw him against the train, was deposited there by the men who cleaned out the space between the two rails, the space where the wheel-flanges run, so that the switch engine could get over the crossing as heretofore stated. Plaintiff also introduced a witness who testified that he saw some men shovelling snow off of that crossing the evening before; but that witness stated that he did not know whether the men he saw were employes of the railroad company or of the Westlake Construction Company, which was building the Avery plant; that employes of the construction company cleaned off that crossing part of the time.

Defendant company introduced testimony showing that none of its employes were at work there the evening before plaintiff received his injuries; and the men who cleaned out the space between the rails where the wheel-flanges run, testified that they did nothing but remove the snow from that space, the quantity of which would not create a deposit of considerable size; and further stated that this snow was thrown by them on the north side of the crossing.

Under the evidence offered by the plaintiff, without the contradictory evidence offered by defendant, the jury under the instructions given, would have been authorized, and unquestionably would have found for plaintiff; but the evidence offered by defendant flatly contradicted that portion of plaintiff's evidence which authorized a verdict for him, and if true authorized a verdict for the defendant.

Under the evidence for plaintiff, he was at a place where he had a right to be, and was injured while engaged in an act which he had a right to be engaged in, as the result of direct negligence on the part of defendant company, and was entitled to recover; while, under the evidence for defendant, plaintiff was not in a place where he had a right to be, nor was he injured while engaged in an act in which he had a right to engage, nor as the direct result of any negligence upon the part of defendant company; and under this evidence, he was not entitled to recover. And, the jury seems to have believed the evidence offered by defendants.

Instruction No. 1, as given, is as follows: ''The court instructs the jury that if they believe from the evidence that the defendant, Illinois Central Railroad Company, by its authorized agents and servants, did negligently place an embankment of snow or ice in or across a public highway of Jefferson County, Kentucky, known as Seventh Street Road, and on the south side of its railroad tracks where they cross said street or road, and that such embankment of snow or ice, if any, rendered the said street dangerous to persons in the reasonable use of the same as a passway, and that the plaintiff, Stevenson, while using the street or road as a passway, and while exercising ordinary care for his own safety, was caused by said embankment of snow or ice to fall under or against a moving train, which ran upon and crushed his right leg to his injury and damage, they will find a verdict for plaintiff and against the defendant, Illinois Central Railroad Company; and if the jury further believe from the evidence that the defendant, Robert Duncan, was the agent or servant of the railroad company, and that he negligently caused such embankment of snow or ice, if any, on said road or street, they should also find their verdict against him.''

Instruction No. 2 is as follows: ''Unless the jury believe from the evidence that the embankment of snow or ice mentioned by witnesses as being on the south side of the defendant's railroad where it crosses the Seventh Street Road, was placed there by authorized agents of defendant, Illinois Central Railroad Company, and that such embankment of snow or ice, if any, rendered the street or road dangerous to persons in the reasonable use of same as a passway, and that the plaintiff Steven-

son, while using the street or road as a passway, and while exercising ordinary care for his own safety, was caused by said embankment of snow or ice to fall under or against a moving train, they will find their verdict for the defendants.''

1.   Appellant objected to the giving of these instructions and argues that under them; (1) the jury was required to find that the appellee company did negligently place the embankment in the road; (2) that the use of the words ''authorized agents'' was misleading; and (3) that the effect of the use of the phrase ''while exercising ordinary care for his own safety'' was to place upon appellant the burden of proving the absence of contributory negligence, or rather of proving that he was exercising ordinary care for his own safety when injured.

As to the first criticism, the word ''negligently,'' as used in Instruction No. 1, was mere surplusage. Intruction No. 2 is the converse of No. 1, and in it the word ''negligently'' is not used. The effect of the instructions in this respect was to inform the jury that if the defendant company placed the embankment there, and that such embankment rendered the road dangerous to persons in the reasonable use of the same as a passway, it was an act for the consequences of which defendant company would be liable; and we do not think the jury could have misunderstood their purport.

As to the second objection, the criticism of the use of the words ''authorized agents'' is purely technical. Had there been any issue raised by the pleadings or evidence as to whether the men who worked for appellee company in cleaning off the snow and ice, were its agents and servants—any question as to the existence of the relation of principal and agent, or master and servant— the instruction, without some further elucidation on this question, might have been prejudicial in this respect. But, there was no denial of the relation; no evidence relative to the question, and the instruction in this respect was not misleading nor prejudicial.

The use of the phrase ''while exercising ordinary care for his own safety,'' if no instruction on contributory negligence had been given, would have been prejudical to appellant, but the court, in instruction No. 3,

gave an instruction on contributory negligence in the usual form.

Instructions must be read and considered as a whole, and when each of the instructions herein given is so read, and considered in connection with the others given, it will be manifest that the law in its entirety was substantially presented, and that the jury, by the use of the language complained of, could not have been misled.

2. Appellant insists that the court erred in striking from his petition certain language, alleging that after he fell, he was in a place of imminent peril, and that the agents of appellee company in charge of its train, by the exercise of ordinary care could have discovered his peril in time to have enabled them to stop the train and avoided injuring him; also, that the court erred in excluding from the jury the evidence of witnesses offered, to the effect that appellee company's servants in charge of said train were not where their duties required them to be, and not in position thereon to transmit signals to the engineer.

Appellant's contention is that appellee company owed a lookout duty to appellant at the crossing in question, and that had its servants been in the places in which this duty required them to be, signals could have been transmitted to the engineer after the discovery of appellant's peril, in time to have prevented his injury. In support of this contention, appellant cites the following cases: P. C. C. & St. L. R. Co. v. Lewis, 18 R., 957; Crowley v. L. & N., 21 R., 1434; I. C. R. R. v. Murphy's Admr., 123 Ky., 796; L. & N. v. Lowe, 118 Ky., 260; L. & N. v. Daniel, 126 Ky., 256.

But, an examination of these authorities discloses that in all of these cases, the injured person was upon the track in the direct path of the train's motion. In those cases, the train ran against the party injured while he was upon a crossing, or upon the track in a place where he was not a trespasser; while in this case, the injured party fell against the train while it was running over and occupying the whole of the crossing.

Under the instructions given, if the embankment of snow was placed in the road by appellee company's servants and rendered the road dangerous to persons in the reasonable use thereof as such road, then appellant was entitled to recover, if his injuries were caused by

said embankment, regardless of whether the train crew were in their proper positions on the train in the performance of their duties. But, if he was endeavoring to get on the train, he was a trespasser, and appellee company owed him no lookout duty, and he could recover only by showing that after his peril was discovered by appellee company's servants, they in the exercise of ordinary care, could have prevented his injury. If he was a trespasser, appellee company's duty was not to discover his peril, nor to keep a lookout, but merely to use ordinary care after such peril was discovered; and the court properly instructed the jury that if appellant was endeavoring to get on the moving train at the time he was injured, there could be no recovery.

3. Appellant contends that the court erred to his prejudice in refusing to permit him to read to the jury the deposition of James Dawson, Jr., taken under the following circumstances.

Appellant had instituted a former action in the Grayson Circuit Court, against appellee company and two members of the switching crew (who were not made parties defendant to this present action) to recover for the injuries herein set up. In that action, the deposition of said witness was taken. That action was dismissed without prejudice, and this present action was filed against appellee company and Robert Duncan, the latter not having been made a defendant in the former action.

If the parties to the present suit had been the same as the parties in the former suit, it would have been unnecessary to retake the deposition of this witness; it could have been read as evidence in the present action, by either party, if offered at the proper time in the proper manner. But, it would be a dangerous practice to permit A to sue B, and take a deposition that might not affect A's interests, but be extremely prejudicial to C; and then permit A, after dismissing the first action, and bringing a new one against B and C, to read such deposition, upon the trial, even under an admonition of the court to the jury to consider it as evidence only as against B and not against C. And the right of a party under such circumstances to read such a deposition is doubtful.

However, there were two other objections to the reading of this deposition, both of them fatal to its admission. Before the trial was commenced, a stipulation was entered into between the parties, that either party might upon the trial, read any of the depositions taken and filed in the former action, and the testimony of any of the witnesses heard in open court upon that trial, as reported by the official stenographer, and also the testimony of the witness heard in the United States Court upon the motion to remand said former action; but said stipulation further provided that "it is understood and agreed that the deposition of the witness, James Dawson, Jr., is not included in this agreement." This precluded the reading of this deposition by either party.

Again, this deposition was not filed in this action at any time, nor offered to be so filed before the commencement of the trial as required by section 585, Civil Code. Under this provision of the Code, before a deposition can be read in an action, it must be filed therein, before the commencement of the trial. See Kentucky Union Co. v. Lovely, 110 Ky., 295, 22 R., 1742; 61 S. W., 272; Andricus' Admr. v. Pineville Coal Company, 121 Ky., 724; 90 S. W., 233; 28 R., 704. So far as the record shows, at the close of the other evidence in chief for plaintiff, this deposition for the first time made its appearance in this action and was offered to be read as against appellee company; and the court properly refused to permit it to be so read.

Upon a consideration of the whole record, it seems to us that appellant has had a fair trial; and the jury having found against him, its verdict should not be disturbed.

The judgment is affirmed.