CASE 67.—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S INTESTATE—JAN. 31.

# Smith's Admx. v. Middleton.

### APPEAL FROM SHELBY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF FOR ONLY PART OF WHAT SHE CLAIMS AND SHE APPEALS. REVERSED.

MASTER AND SERVANT—LIABILITY FOR SERVANT'S NEGLIGENCE—EVIDENCE THAT SERVANT WAS ORDINARILY CAREFUL—GROSS NEGLIGENCE OF DRUG CLERK—MASTER'S LIABILITY FOR PUNITIVE DAMAGES:—MEASURE OF DAMAGES FOR CAUSING DEATH.

Held: 1. Where it was sought to charge the master with the servant's negligence, evidence that the servant was a careful, sober. painstaking man was not admissible for defendant; no attempt having been made by plaintiff to prove that the servant was generally careless, inattentive, or dissipated.

2. The act of a drug clerk in selling morphine for calomel, and placing it in a box labeled, "Calomel ¼ grain," was evidence of gross negligence, entitling plaintiff to an instruction defining that degree of negligence, and telling the jury that, if they believed such negligence existed, they might award punitive damages against the employer for a death caused thereby.

3. Punitive damages may be awarded against the master, whether a natural person or a corporation, for the gross negligence of the servant in the line of his employment.

4. In an action to recover damages for the death of a child five years of age, it was error to instruct the jury, if they should find for plaintiff, to fix the damage at a fair equivalent in money for the power of deceased to earn money, lost by reason of the destruction of his life, and that in fixing the damages they should "take into consideration the age of the deceased at the time of his death, his earning capacity, and the probable duration of his life," as the words "his earning capacity" were probably misleading, and should have been omitted, in view of the tender years of decedent. .

BEARD & MARSHALL, FOR APPELLANT.

The mother of Charles Earl Smith in Nov. 1900, called at appellee's drug store in Shelbyville, Ky., and asked for a quarter's worth of calomel, at the same time giving one of defend-

Smith's Admx. v. Middleton.

ant's employes a box marked · calomel, with 25 cents in it, and the employe by mistake put morphine in the box instead of calomel.    The mother the day after administered three doses of this morphine to her son believing that it was calomel, from the effect of which he died.    The employe of defendant denies that he put morphine in the box.    Upon this issue joined, the jury returned a verdict for the plaintiff and fixed the compensation to decedent's estate at one cent.    The plaintiff filed grounds and moved the court for a new trial which was overruled and she has appealed.

We contend:

1. The court erred in giving instruction "C" offered by the defendant and to which plaintiff objected and excepted and which is as follows:    "If the jury find for the plaintiff they will fix the damages at a fair equivalent in money for the power of the deceased to earn money, lost by reason of the destruction of his life, not exceeding $10,000, and in fixing the damages, the jury will take into consideration the age of the decedent at the time of his death, his earning capacity, and the probable duration of his life."

2. If the court does not agree with us upon the question just discussed, there is another and we think even a more powerful reason for the reversal of the judgment in this case, and that is the inadequacy of the compensation.

Can it be said that in this case one cent equals the actual pecuniary injury sustained?

3. Another ground for reversal which we urge is the refusal of the court to give instructions asked for by plaintiff, Nos, 1 and 2 upon gross negligence, and which are as follows:

(1) "Gross negligence is the failure to exercise slight care."

(2) "If the jury believe from the evidence that defendant, his servants, agents or employes, were guilty of gross negligence they may find punitive damages in all not exceeding $10,000."

### AUTHORITIES CITED.

State Constitution, sec. 241; Kentucky Statutes, sec. 6; L. & N. R. R. Co. v. Eakin's Admr., 20 Ky. Law Rep., p. 736; Civil Code of Practice, sec. 341; Ray v. Jeffries, 86 Ky., 367; Taylor v. Hauser, 12 Bush, 465; Jesse v. Shuck, 11 Ky. Law Rep., 463; A. & E. Ency. of 'Law, 2d ed., vol. 8, p. 624, and authorities cited; McDonald v. Walter, 40 N. Y., 551; Moreley v. Jamison, 68 Miss., 326; Boggess v. Metropolitan St. Ry. Co., 118 Mo., 328; Michalke v. Galveston H. & S. Ry. Co. (Tex.

Smith's Admx. v. Middleton.

Ct. Cir. App.) 27 S. W. Reporter, 164; Henderson v. St. Paul & D. R. Co., 52 Minn., 479; Fleet & Semple v. Hollenkamp, 13 B. Monroe, 225.

WILLIS & WILLIS, ATTORNEYS FOR APPELLANTS.

The most excellent brief of associate counsel Beard & Marshall, fully covers this case except two points that we desire to press, viz.: Error in the admission of testimony and the failure to instruct the jury on gross negligence:

1. Incompetent evidence. Questions asked defendant Middleton in reference to his clerks, Bodkin and Meade:

"State whether or not he (Bodkin) is a careful, sober, painstaking man?" Answer. "I have always considered him as such." The same witness was asked as to Mr. Meade. "State whether or not he is a sober, attentive, careful business young man?" Answer. "Yes, Sir."

These questions and answers were objected to before they were answered, the objections overruled and exceptions saved.

We consider this a gross error. There was no issue in the pleadings as to the reputation or character of defendant's employes. This evidence was calculated to make the jury believe that all the defendants was required to do was to employ sober, careful and painstaking men, when the real issue was whether the defendant or his employes were guilty of negligence in the alleged acts.

2. Instructions.

We insist that the instructions, offered by appellant, on gross negligence, should have been given. The whole case goes upon the idea that it is gross neglect of itself for a druggist to make a mistake in the selling or compounding of medicines. So dangerous are the articles they handle, so awful the consequences of their mistakes, that the law permits no excuse and recognizes no degree of negligence in such mistakes.

### AUTHORITIES.

On Admission of Testimony, Jones on the Law of Evidence, sec. 147, 161; Shaw v. Hollenbach, 21 Ky. Law Rep., 1561. On Instructions. Fleet & Semple v. Hollenkamp, 13 B. Mon., 219.

J. C. BECKHAM & SON, FOR APPELLEE.

Two grounds are especially urged by appellant for a reversal. *First.* The giving of the instruction defining compensatory damages and *Second*, The court's refusal to give an instruction upon gross negligence.

The court has the amplest authority for the instruction on

Smith's Admx. v. Middleton.

compulsory damages in the courts of many States and espec-
ially in the decisions of this court, all of which without ex-
ceptions sustain the rule announced.

An instruction on gross negligence had no proper place in this
trial.     There was no evidence at all of gross negligence upon the
part of defendant or his agent or servants.

*Third.*  The appellant also complains that testimony was heard
as to the skill and competency of Dr. Preissler, Bodkin and
Meade, clerks of defendant.  This testimony was clearly com-
petent.

## CASES CITED.

L. & N. R. R. Co. v. Eakin's Admr., 20 Ky. Law Rep.,
742; Same v. Graham's Admr., 17 Ky. Law Rep., 1232; Same
v. Kelly's Admr., 19 Ky. Law Rep., 74; C. & O. Railway Co.
v. Lang's Admr., 19 Ky. Law Rep., 68.

G. G. GILBERT, FOR APPELLEE.

Charles Earl Smith, a boy about four years old, died, it is
claimed, from the effects of morphine administered by its
mother.  It is claimed that the mother and aunt applied at the
drug store for calomel pellets and that Mr. Bodkin, one of
the clerks in the store, carelessly gave out morphine pellets
instead of calomel.    The grandmother qualified as administra-
trix, and brings this suit for $10,000 damages.

We claim that appellant has had a fair trial without any
substantial errors and respectfully ask an affirmance.

## POINTS AND AUTHORITIES CITED.

The master is ordinarily liable in actual damages only, even if
the negligence of the servant was gross.      Sherman & Red. on
Negligence, sec. 749; L. & N. R. R. Co. v. Kelley's Admr.,
19 Ky. Law Rep., 76; Staples v. Schmid, 19 L. R. A., 824;
Hagan v. Railroad Co., 3 R. I., 88; Lake Shore, &c., R. R. Co., v.
Prentice, 147 U. S., 101; Field on Damages, ec. 85; Sutherland
on Damages, vol. 1, side page 750.

The rule is otherwise as to cases where the master is a cor-
poration.     Memphis & Cin. Packet Co. v. Nagel, 97 Ky., 14;
L. & N. R. R. Co., v. Ballard, 85 Ky., 307.

The true measure of damages in this case is a fair equivalent
in money, &c.  L. & N. R. R. Co. v. Miles' Admr., 20 Ky. Law
Rep., 532; C. & O. Ry. Co. v. Long's Admr., 19 Ky. Law Rep.,
65; L. & N. Ry. Co. v. Kelley's Admr., 19 Ky. Law Rep., 69;
L. & N. Ry. Co. v. Eakin's Admr., 20 Ky. Law Rep., 736.

Smith's Admx. v. Middleton.

This case should not be reversed on account of the smallness of damages. Civil Code, sec. 341; Ray v. Jeffries, 86 Ky., 367; Callahan v. Harris, 6 Ky. Law Rep., 657.

Cases not applicable. Fleet & Semple v. Hollenkamp, 13 Ben Monroe, 219; Hawkins & Co. v. Riley, 17 Ben Monroe, 109.

The master may show that the servant was prudent and competent, etc. Bailey on Personal Injuries, etc., sec. 1404 and sec. 1503; Buswell on Personal Injuries, sec. 198; Field on Damages, sec. 85. Sutherland on Damages, vol. 1, page 75.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee was a druggist at Shelbyville. He had besides himself, in charge of his store, a licensed pharmacist, and two other salesmen who were not licensed pharmacists. Charles Earl Smith was an infant aged about four years. His mother and her sister called at appellee's drug store with an ordinary pill box bearing a label, besides the druggist's name, as follows: "¼ grain calomel." They handed this box to one of appellee's clerks,—one who was not a pharmacist,—and asked him to furnish in the box 25 cents worth of calomel in one-fourth grain tablets, which he undertook to do. They also made other purchases, including having a prescription refilled. They returned to the drugstore shortly afterwards, and were delivered their packages by a clerk, which they carried to their homes. The statement of the women is that they kept on hand a supply of calomel in this form for use as occasion might seem to require. Mrs. Smith had three little children, Charles Earl being the second. He was complaining of a cold, and as a remedy she sought to administer what she believed was calomel, being some of the pellets contained in the box referred to. She did give him three of these pellets, —one at the end of each hour for three hours. It subsequently developed that, instead of calomel, the box contained morphine. The result was the death of the child.

His administratrix has brought this suit against the drug-
gist for the negligent destruction of the child's life, alleg-
ing that the mistake by which the clerk furnished mor-
phine instead of calomel, and putting it in a box labeled,
"Calomel ¼ grain," was gross negligence of such a degree
as entitled the plaintiff to recover punitive damages. The
jury found for the plaintiff a nominal sum, and she appeals,
presenting three grounds for the consideration of this
court, upon which she asks a reversal.

1. The defendant (appellee) was permitted to prove on
the trial that the clerk who furnished the medicine, and
who, by the way, claimed he did not furnish morphine,
but did calomel, was a careful, sober, painstaking man.
This evidence was objected to. It had not been attempted,
for the plaintiff, to prove that the clerk was either gener-
ally careless, inattentive, or dissipated. Therefore the
question was not whether generally and ordinarily the
clerk was as suggested by the evidence, but whether upon
the occasion under inquiry he was careful or negligent. In
our opinion, it ought not to affect this case in the least
however careful and attentive the clerk was ordinarily,
if on this particular occasion he was negligent or grossly
negligent. The sole question to be submitted to the jury
on that point was whether the clerk did furnish morphine
on this prescription instead of calomel, and whether such
an act was, or not, grossly negligent. We are of opinion
that the testimony discussed above should have been ex-
cluded, and the inquiry confined to the particular. trans-
action,—as to whether it was or not negligent.

2. On the trial of the case the court refused to submit
to the jury the question of punitive damages. Whether
this was upon the theory that the master, when a natural

person, is not liable to punitive damages, because of the gross neglect of his servant when upon the master's business and in the line of his employment, where care has been used by the master in the selection of the servant, or whether it was upon the idea that there was no evidence of gross neglect shown in this case, we are not informed. The court is of the opinion that to put in charge of a business of this kind one with authority to dispense such poisonous and dangerous drugs as morphine (it was shown in this case that these unlicensed clerks were authorized to sell this drug), where such one gave such a deadly drug to one calling for calomel, placing it in a box labeled, "Calomel ¼ grain," without notice of the true nature of the drug furnished, was of itself such evidence of that degree of gross negligence that would warrant a jury in finding punitive damages against such wrongdoer. It is not suggested, nor can we apprehend that it is in any wise probable, that the act of furnishing the wrong drug in this case was willful. If it was furnished by the clerk, it was undoubtedly a mistake and unintentional. However, it was a mistake of the gravest kind, and of the most disastrous effect. We can not say that one holding himself out as competent to handle such drugs, and who does so, having rightful access to them, and relied upon by those dealing with him to exercise that high degree of caution and care called for by the peculiarly dangerous nature of his business, can be heard to say that his mistakes by which he furnishes a customer the most deadly of drugs for those comparatively harmless is not, in and of itself, gross negligence, and that of an aggravated form. In a business so hazardous, having to do so directly and frequently with the health and lives of so great a number of people, the highest degree of care and prudence for the safety of those dealing with such dealer

is required.  And that degree of care exacted of such dealer will be required, also, of each servant entrusted by him with the conduct of his calling.  In argument, however, much stress is laid upon the suggestion, if the master, who is not a corporation, exercises due care in the selection of competent and careful servants, that for their gross or willful neglect, even in the discharge of their duties in his business, he is not liable.  It is argued that as punitive damages are awarded, in one sense, as a punishment of the wrongdoer for his negligence, only the one actually guilty should be so punished.  It is admitted that a contrary rule exists in this State where the master is a corporation.  It is said that in such a case the master can act only by its servants; that from the necessities of the case the servant, when acting for his employer in the discharge of his line of duty, is the master, so far as the act in question is concerned.  We are asked to differentiate the liabilities of these two different classes of employers. Why a different rule of liability should be applied to one who is compelled to operate his business by servants, to that applied to one who elects to do so, is not shown, nor are we able to perceive.  There seems to have been at one time much contrariety of opinion among the courts on this point, which has later become less marked.  In this State we never recognized the distinction now sought to be drawn.  The doctrine seems to us to be unsound, if not pernicious.  It would imply that, with respect to all the grossly neglectful acts or intentional acts of the servant in the supposed furtherance of his master's business, the law clothed the master with immunity, if the act was right, because it was right, and, if it was wrong, it clothed him with like immunity because it was wrong.  He would thus get the benefit of all his servant's acts done for him, whether right

or wrong, and escape the burden of all intentional or gross-ly neglectful acts done for him which were wrong. Under the operation of such a rule, it would always be safer for the master to conduct his business vicariously than in his own person. The public are invited to deal with the ser-vant concerning his master's business. Through him only can the business be transacted, if the master so wills. Then for his intentional or grossly neglectful act done within the scope of his employment the one dealing with him would be left without remedy. This would be an inducement to one engaged in a specially hazardous business to conduct it by the means of financially irresponsible agents, because if they should succeed in the business, the master would get all the profits, while, if by their gross negligence or will-ful act injury resulted to another, the master and his busi-ness would not be hurt, so far as direct punishment was in-volved. It is said by Thompson, in his Commentaries of the Law of Negligence: "A doctrine so fruitful of mis-chief could not long stand unshaken in an enlightened system of jurisprudence." In Hawkins v. Riley, 17 B. Mon., 146, which was an action by one injured by the al-leged gross negligence of a stage driver,—the stage being operated by a natural person,—the court said: "If the col-lision was brought about by the wantonness, recklessness, or gross negligence of the driver, then it was permissible in the jury, in view of all the facts, to award what the law terms, 'exemplary damages' as well against the proprietors as the driver." We are of opinion, therefore, that the court erred in not giving to the jury an instruction defining "gross negligence"—the one asked for—and predicating upon it another permitting the plaintiff to recover punitive damages if the jury find such negligence to exist.

3. As to the measure of "compensatory damages," the

court gave the jury the following instruction: "If the jury, find for the plaintiff, they will fix the damages at a fair equivalent in money for the power of deceased to earn money, lost by reason of the destruction of his life, not exceeding $10,000; and in fixing the damages the jury will take into consideration the age of the deceased at the time of his death, his earning capacity, and the probable duration of his life." Ordinarily this instruction fairly presents the law as administered in this State on this subject. In this case, considering the tender years of the decedent, we are of the opinion that the use of the expression "his earning capacity" was probably misleading to the jury. We rather think that an instruction after this form would have been more appropriate: "If the jury find for the plaintiff, they will fix the damages at such a sum, not exceeding $10,000, as would be a fair compensation to the estate for the destruction of the power of the deceased to earn money; and in fixing such damages the jury should take into consideration the age of deceased at the time of his death, and the probable duration of his life."

The judgment is reversed, and the cause remanded, with directions to award appellant a new trial under proceedings not inconsistent herewith.