## Ohio County Drug Company v. Howard.

(Decided December 14, 1923.)

### Appeal from Ohio Circuit Court.

1. Druggists—Instruction Authorizing Compensatory and Punitive Damages Held Erroneous.—In an action against druggists for injuries occasioned by error in filling prescription, instructions authorizing the jury to award compensatory damages if defendant "failed to exercise slight care," and to allow punitive damages

in addition if defendant "was grossly negligent," and defining gross negligence as "failure to exercise slight care," were erroneous, as predicating compensatory and punitive damages on precisely the same degree of negligence.

2. Damages—Punitive Damages Permitted for Gross Negligence.— Where, in tort, liability for compensation is based on a want of ordinary care or ordinary negligence, smart money in addition is allowable, if the negligence is gross.

3. Druggists—Care Required in Filling Prescriptions.—Care to be exercised by druggists in filling prescriptions is that used by ordinarily skillful and prudent men, in like business and under similar circumstances.

4. Appeal and Error—No Reversal for Favorable Error.—Error in basing liability of druggist for mistake in filling prescription, both as to compensatory and punitive damages, on gross negligence, was not prejudicial to the druggist, and reversal will not be ordered.

5. Damages—Instruction should Make Clear that Medical Expense Resulted from Defendant's Act.—In an action for damages result-ing from mistake in filling a prescription, an instruction authoriz-ing allowance for hospital fees and medical treatment was de-fective, where it did not make it clear that only such expenses as proximately resulted from the mistake in filling the prescription should be allowed, because the latter clause followed another separated by a semicolon from the one relating to such expenses.

6. Druggists—Evidence of Heavy Demands on Druggists During Epi-demic Competent in Mitigation of Punitive Damages for Mistake in Filling Prescription.—In an action for damages occasioned by mistake in filling prescription, where punitive damages were sought, the court erred in refusing to permit defendant to prove or plead that, owing to a severe epidemic, heavy demands were made on defendant, and it could not employ additional help, and its clerks were worn out and nearly exhausted in mitigation of punitive damages, though such fact would not excuse the mis-take, so as to relieve defendant from liability for compensation.

7. Trial—When Tests are Permissible.—In the discretion of trial courts, tests are permissible before the jury for the demonstration of the truth or falsity of an issue in the case, but such tests are never permissible, unless all of the conditions are substantially the same as in the case under trial.

8. Evidence—Not Common Knowledge that Human Beings React Alike to Drugs.—It is not a matter of common knowledge that human beings are sufficiently alike in their reactions to drugs internally administered to warrant an experiment on one person to prove what actually happened when the same drug was similarly taken by another.

9. Evidence—No Presumption that Drug Produces Like Effect in Dif-ferent Persons.—Human beings are not sufficiently near alike to warrant a presumption that when a drug produces certain ef-

fects on one person it will, to a certain extent, similarly affect another, taking into account age, strength, and other conditions present.

10. Evidence—Common Knowledge that Anesthesians Sometimes Kill Patients.—It is a matter of common knowledge that even trained anesthesians have not yet attained such skill with reference to ether as to be able to determine the effect of ether on different persons, taking into account difference in age, strength, and other conditions present, since they sometimes kill after taking every known precaution.

11. Evidence—No Common Knowledge of Result of Poisonous Drug Taken into Stomach, and that it is Safer to Administer Hypodermatically.—It is a matter of common knowledge, in the medical world at least, that even the most expert physician cannot foretell with reasonable certainty the result of poisonous drugs taken into the stomach and that for that reason it is much safer and more satisfactory to administer them hypodermatically, and that even then the probable effect depends on organic conditions not apparent to the non-expert, and even to an expert except on careful examination and test.

12. Trial—Judicial Discretion Held Not Abused in Not Permitting Experiment.—In an action for damages occasioned by mistake in filling a prescription, held, that it cannot be said the trial court abused its discretion in refusing to permit defendant to experiment by giving the mixture alleged to have caused the injuries to witnesses before the jury.

13. Trial—No Complaint of Objectionable Remarks of Counsel Withdrawn or Excluded.—Complaint cannot be made of arguments of counsel, where objectionable remarks were withdrawn by counsel or excluded by the court on objection thereto.

14. Appeal and Error—Error as to Punitive Damages Held to Require Reversal as to Whole Case.—Where a specific amount was allowed for compensatory damages, and another certain amount for punitive damages, the judgment cannot be reversed only as to the punitive damages and be otherwise affirmed because of prejudicial exclusion of evidence in mitigation of punitive damages, where there was evidence of gross negligence warranting punitive damages.

A. D. KIRK, BARNES & SMITH, GLENN & SIMMERMAN, ERNEST WOODWARD and J. F. GORDON for appellant.

HEAVRIN & MARTIN for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

From an attack of influenza, plaintiff, Mrs. Flora Howard, was confined to bed for four or five days in January 1919, after which she resumed her household duties

as well as her duties as assistant to the superintendent of schools for Ohio county. She was not fully recovered, however, and continued to be extremely nervous and considerably run-down, until in April she developed neuralgia. Her physician then prescribed as a sedative a mixture of two ounces of penta bromide and one ounce of paraldahyde. The defendant drug company, in filling the prescription, by mistake substituted a solution of formaldehyde for paraldehyde, and plaintiff took a teaspoonful of the mixture diluted in a small quantity of water as directed on the bottle and in the prescription. For injuries alleged to have resulted therefrom, she instituted this action, and recovered a judgment for $3,000.00, of which $2,000.00 was allowed as compensatory damages, $700.00 for hospital and medical expenses, and $300.00 as punitive damages.

The chief grounds of complaint by the defendant are, that punitive damages were not recoverable; that the verdict is excessive in the amounts allowed as compensation and for medical and hospital expenses; and that the court erred in several rulings with reference to the pleadings and evidence, and in the instructions given.

Plaintiff alleged gross and wanton negligence. The instructions authorized the jury to award compensatory damages, including hospital fees and medical expenses, if the defendant "failed to exercise slight care" in filling the prescription; and to allow punitive damages in addition if the defendant "was grossly negligent in so doing."

There was no reference in the instructions to wanton or willful or reckless negligence, and gross negligence was defined as the "failure to exercise slight care." It is therefore apparent at once that both compensatory and punitive damages were predicated upon precisely the same degree of negligence.

If this is the law, the druggist, whenever liable at all for tort, is liable to pay both compensatory and smart money. That this is not the purpose of the law we are sure, nor do we believe it ever has been so declared.

Where in tort liability for compensation is based upon a want of ordinary care or ordinary negligence, it is the rule in this state, and many others, to allow smart money in addition if the negligence is gross, but in no case that we have been able to find are both compensatory and exemplary damages predicated upon the same degree of negligence, unless it be our own cases of this particular

kind upon which alone appellee relies. In the first of these, Fleet & Semple v. Hollenkemp, 13 B. Mon. 219, this court held that the rules in regard to the degree of negligence necessary to exempt a party from responsibility in certain cases do not apply to a druggist in dispensing dangerous drugs; that for all practical purposse the liability of a druggist in such sales is that of an insurer; and that the damages "may be more or less exemplary or otherwise as the circumstances of aggravation or extenuation characterizing each particular case may reasonably require" in the sound discretion of the jury, depending upon the nature and extent of the injury done and the manner in which it was inflicted, whether by negligence, wantonness, or with or without malice.

Even if this extreme case be accepted for our guidance, and which in making of the druggist an insurer is out of line with all the cases examined, we submit that it does not warrant an instruction to award both compensatory and punitive damages for the same degree of negligence, but only that liability for the former does not depend upon the degree.

The next case is Smith's Admrx. v. Middleton, 112 Ky. 588, 66 S. W. 388, where a drug clerk sold morphine for calomel, resulting in the death of a five-year-old child. This case holds that the highest degree of care was required, that the sale was gross negligence "of an exaggerated form," and such as to authorize the infliction of smart money; that the court erred in refusing "an instruction defining gross negligence—the one asked for—and predicating upon it another permitting the plaintiff to recover punitive damages if the jury find such negligence to exist." The instruction permitting compensation is approved, but not copied in the opinion.

By reference to the record in that case, we find that compensation was predicated upon ordinary negligence, and this being true, it was not error but in accord with the general rule in tort cases in this state to allow punitive damages for gross negligence.

The last case, Sutton's Admr. v. Wood, 120 Ky. 23, 85 S. W. 201, holds that the employment of a clerk not a registered pharmacist who sells strychnine in violation of a statute renders the employer *prima facie* guilty of negligence and liable for damages occasioned thereby; and, that a druggist is required to exercise the highest degree of care for the safety of the public dealing with

him. The subject of punitive damages is not discussed, so this case has no direct bearing upon that question.

It would be difficult from these cases, as it has been found on principle by other courts as well as this, to define the different degrees of negligence that allow the one or both kinds of damages, but it is entirely clear, even from these cases, that both kinds of damages are not recoverable for the same degree of negligence. And while it is stated in all of these cases that a druggist in dispensing poisonous drugs must exercise the highest degree of care, as indeed he must in order to exercise ordinary care under the circumstances, in only one of them was this care defined by an instruction, the Smith-Middleton case, and it was there defined as such care as ordinarily skillful and prudent men usually exercise in like business and under similar circumstances, which is of course, in legal terminology, ordinary care.

Upon this question it is stated, in 9 R. C. L. 704, upon authority of many cases cited in the notes, that: "The legal measure of the duty of druggists towards their patrons, as in all other relations of life, is properly expressed by the phrase 'ordinary care,' yet it must not be forgotten that it is 'ordinary care' with reference to that special and peculiar business, and in determining what degree of prudence, vigilance, and thoughtfulness will fill the requirements of 'ordinary care' in compounding medicines and filling prescriptions, it is necessary to consider the poisonous character of many of the drugs with which the apothecary deals, and the grave and fatal consequence which may follow the want of due care. For people trust not merely their health but their lives to the knowledge, care and prudence of druggists, and in many cases a slight want of care is liable to prove fatal to some one. It is therefore proper and reasonable that the care required shall be proportioned to the danger involved."

In 19 C. J. 778, upon authority of practically the same cases, the rule is stated thus:

"The legal measure of the duty of a druggist towards his patron is properly expressed by the phrase 'ordinary care' when considered with reference to the special business. As applicable to such business it calls for a degree of vigilance and prudence which is commensurate with the dangers involved, and this has been defined to be the highest practicable degree of prudence, thoughtfulness, and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business in

order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poison for harmless medicine. But he need not use extraordinary care or a higher degree of care than is ordinarily used by other qualified druggists.''

The instructions approved by this court in Smith's Extrx. v. Middleton, *supra,* are in accordance with the above texts and the great weight of authority, and as that is the more recent case from this court on the subject and maintains the ordinary distinctions in the degrees of negligence authorizing compensatory and punitive damages, we think it should be followed rather than the older case of Fleet, etc. v. Hollenkemp, *supra,* which makes of the druggist an insurer.

Ordinary negligence was defined in the Smith case as ''the failure to exercise such care as ordinarily skillful and prudent men usually exercise in like business and under circumstances similar to those in this case.'' If the first instruction in this case had been based upon ordinary negligence thus defined, as upon both principle and authority we think it should have been, there would have been no error in allowing punitive damages upon gross negligence, which was correctly defined. This error, however, was favorable rather than prejudicial to the defendant, since compensation as well as punitive damages was predicated upon gross negligence, and a reversal will not be ordered because thereof, but upon another trial, to be ordered for other reasons, the instructions will be drawn as above indicated.

The second instruction, authorizing allowance for hospital fees and medical treatment, is also defective in that it does not make it clear that only such expenses as proximately resulted from the mistake in filling the prescription should be allowed, since this latter clause follows another separated by a semicolon from the one relating to such expenses. Ordinarily this is not a reversible error, since the court of course meant this limitation should apply to both clauses, as was more clearly indicated by the fourth instruction, and it therefore would seem the jury ought not to have misunderstood what the court meant. Still, upon another trial this instruction should be corrected to avoid the possibility of any misunderstanding about the matter.

Complaint is also made of the court's refusal to let the defendant plead or prove that owing to a severe epi-

demic then prevailing in the community, the heavy demands made upon defendant and its inability to employ additional help, its clerks were worn out and nearly exhausted. That this fact would not excuse defendant's mistake or relieve it from all liability is clear, we think, and the court did not err in striking such allegations from the answer, or in not admitting such proof to affect defendant's liability for compensation.

But it was competent in mitigation of punitive damages, although not necessarily determinative of that question. If, as this evidence tends to prove, defendant, in a possibly unwise attempt, was nevertheless endeavoring, beyond the strength and endurance of all the help it could then obtain, to supply its customers with needed medicines during an epidemic, it seems only reasonable and just that that fact ought to be taken into consideration in fixing the amount at least of smart money that ought to be inflicted upon it, over and above compensation for any injury plaintiff sustained.

We are therefore of the opinion that the court erred in refusing to admit such evidence, under proper admonition as to its purpose, and that this error was prejudicial.

Another complaint is the refusal to permit a test to be made in the presence of the jury, and the rejection of evidence showing the result of like tests theretofore made, to prove that the mixture taken by plaintiff could not have produced the effects she and several of her witnesses testified it did produce.

There is no dispute about the mixture taken, the entire controversy being about its effect. Several experts testified it could not have had the immediate effect upon plaintiff proven by her witnesses, or any injurious effect whatever, and defendant offered four witnesses who would have testified had they been allowed to do so, that they had taken the same dose prepared in the same way from the same bottle of formaldehyde solution without discomfort, and they also offered to repeat the experiment in the same way before the jury.

In Stearns Coal & Lumber Co. v. Williams, 177 Ky. 701, 198 S. W. 54, we upheld the trial court in refusing to permit an expert electrician to make an experiment upon the plaintiff to prove that the volume of electricity which other evidence showed was passing through wires at the time of the accident could be withstood without injurious results.

That case differs from this one, in that the plaintiff was not asked, as in that case, to submit to the test, but in the course of that opinion we stated that:

"It is now an acknowledged rule in this jurisdiction that . . . within reasonable bounds, tests may be made for the purpose of demonstrating the truth or falsity of an issue made in the case, but such practice is not only a matter largely within the sound discretion of the trial court, but it may be demanded as a matter of right where there is a reasonable probability of its endangering the health or safety of the person upon whom it is proposed to be made."

The latter portion of this statement clearly refers to the effort in that case to subject the plaintiff unwillingly to a test which might endanger his health or safety, and, just as clearly, is not applicable here, where the witnesses willingly offered to submit themselves to a test they claimed they previously had made without discomfort.

Not only is it true that it is now the recognized rule in this jurisdiction that in the discretion of the trial courts tests are permissible for the demonstration of the truth or falsity of an issue in the case, but this rule is quite generally recognized especially in permitting experiments as evidence of a tendency, capacity, or quality. Wigmore, vol. 1, section 445.

As the vital question at issue in this case is the tendency, capacity, or quality of a certain mixture to produce certain effects, it is insisted the offered experiments should have been permitted.

But such experiments, upon the plainest of reasons, are never permissible unless all of the conditions are substantially the same as in the case under trial, and it is upon this ground that appellee insists the court properly refused to permit the experiments in the presence of the jury and rejected evidence of like previous experiments.

The dose the witness offered to take was the same as plaintiff had taken, but it was not shown and we are not prepared to say that any drug will certainly have the same, or even approximately the same, effect upon the same person at different times, much less that it is even probable it will have the same effect upon a robust man as upon a sick, nervous, and run-down woman. If our eyes may be depended upon to enlighten us as to the tendency, capacity, and quality of glass taken internally, it is at least harmless to some people, but we have never been

convinced such is a fact, much less that even if it is harmless to some people, it would not harm others. While we are not suggesting that appellant sought to practice a trick of any kind upon the court, this illustration aptly suggests a danger at least involved in the admission of an experiment by one person to prove the result of apparently the same thing upon another. But eliminating any consideration of the opportunity for purposeful deceit, we are yet not convinced it is matter of common knowledge, or even true, that human beings are sufficiently alike in their reactions to drugs internally administered to warrant an experiment upon one person to prove what actually happened when the same drug was similarly taken by another.

It may be suggested that this objection goes to the weight to be given such evidence rather than its competency to prove the tendency, etc., and this is largely true, but not, we think, the whole truth.

The rule admititng experiments to prove an issue involving tendency, capacity, and quality is of rather recent development, and a great many cases exemplifying its application are annotated in 8 A. L. R., pages 11-59. In one of those cases, Moehlenbrock v. Parke Davis & Co., 141 Minn. 154, 169 N. W. 541, evidence strikingly but not exactly like that rejected here was held competent. In that case a recovery was sought for a death alleged to have been caused by the administration of impure ether as an anesthetic, against the manufacturer thereof, and it was held that evidence was admissible as to the effect of ether out of the same can administered to another patient upon the following day. This decision is rested upon the ground that human beings are sufficiently near alike to warrant the presumption that when a drug produces a certain effect on one person, it will, to a certain extent, similarly affect another, taking into account age, strength, and other conditions present.

We are unable to agree that this position is sound, for the reason that we do not believe a jury is ever capable of taking into account the differences in age, strength, and other conditions present. Even trained anesthesians have not yet attained such skill with reference to ether, as is matter of common knowledge, since they sometimes kill, after taking every known precaution to be sure that the "conditions present" are such as death will not ensue.

It is also, we think, matter of common knowledge in the medical world at least, that even the most expert phy-

sician cannot foretell with reasonable certainty the result of poisonous drugs taken into the stomach; that for that reason it is much safer and more satisfactory to administer them hypodermatically, and that even then the probable effect depends upon organic conditions not apparent to the non expert, or even to an expert, except upon careful examination and test.

Under all of the authorities, the admissibility of this character of evidence depends primarily upon the aptitude of the experiment to prove the tendency, capacity, or quality in issue, and, for that reason, is largely within the sound discretion of the trial court, whose opportunity to judge whether the offered experiment fits the conditions demanded to render it admissible is much better than this court's; and we are unable to say a sound judicial discretion was abused in the rejection of such evidence in this case, if, in any such case as this, that character of evidence ought ever to be admitted, a question not now decided.

Complaint is also made of the closing argument of appellee's counsel to the jury, but we find no merit in this contention, as all objectionable remarks seem to have been withdrawn by counsel or excluded by the court upon objection thereto.

The final and chief insistence of appellant is, that the verdict is flagrantly against the evidence, and grossly excessive. This of course is true, if, as is appellant's earnest contention, supported by much if not the decided weight of the evidence, that appellee's subsequent illness did not result from and was not even aggravated by her taking the solution complained of. But it is not true if her illness resulted wholly or largely therefrom, as is indicated by at least some of the evidence.

That there was sufficient evidence to carry the case to the jury is not denied, and it was peculiarly a question for the jury to decide not only whether any of plaintiff's subsequent illness and expenses for treatment in a hospital four months thereafter was caused by defendant's confessed mistake in filling her prescription, but if so to what extent.

This latter question was submitted upon an instruction (No. 4) which is not criticised, and while the jury evidently has ascribed to defendant's mistake practically all of the discomfort plaintiff subsequently endured upon what seems to us quite inconclusive proof that it resulted therefrom exclusively if at all, we would nevertheless be

reluctant to substitute our judgment for theirs to the extent of saying that the verdict is flagrantly against the evidence, or even excessive, if the trial had been free of error that might have had a contributing effect upon the size of the verdict.

Really the only question in the case was the size of the verdict, as defendant confessed its mistake. In view of the inconclusive character of the evidence bearing directly upon that particular question, it is apparent the error in denying to defendant an opportunity to prove mitigating circumstances may have increased, and account largely for the amount of the allowance as punitive damages, and that this part of the judgment must be reversed.

Then again, with the plaintiff's evidence at least inconclusive on the vital question of the extent of the causal effect of defendant's mistake upon her subsequent illness, it was peculiarly important that the instructions should have made it plain that compensation should be allowed for only such hospital fees as directly resulted from such mistake, and it is therefore possible, though we think improbable, that the error in instruction No. 2, usually considered harmless and even though seemingly cured by the fourth instruction, may have been prejudicial here.

Finally, as there was evidence defendant's negligence was gross, punitive damages were allowable, and this is not a case where that part of the judgment may be reversed and otherwise affirmed, as often is done where such damages were not recoverable.

We have therefore concluded, after much discussion and a careful consideration by the whole court, that the entire judgment should be reversed, and the cause remanded for another trial consistent herewith, and it is so ordered.