**MARIGNY v. DEJOIE et al.**

No. 16371.

Court of Appeal of Louisiana. Orleans.

March 8, 1937.

L. H. Gosserand, of New Orleans, for appellant.

A. P. Tureaud, of New Orleans, for appellees.

JANVIER, Judge.

Edward Marigny, suffering from a minor ailment, summoned his physician, who prescribed certain medicine in the shape of pills and directed that two be taken at bedtime. The physician prepared a prescription order reading as follows:

"Tabletae hydrargyri chloridi mitis comp. * * * Two at bed time as directed."

The prescription order was sent to the pharmacy owned by defendants, of which one of them, Lucille Dejois Tureaud, was the pharmacist. She, in filling the prescription, which, when translated, called for compound cathartic tablets, erroneously sent bichloride of mercury tablets of 7½ grains each. Marigny took two of the tablets and almost immediately became violently ill. He was rushed to the Touro Infirmary for emergency treatment, where the contents of his stomach were removed by means of a stomach pump. He was then taken to the Flint-Goodridge Hospital, where he remained for some time. He has since suffered severely and, contending that the error in filling the prescription resulted from negligence on the part of the pharmacist and that all his subsequent sufferings have resulted from that error, seeks recovery from defendants, owners of the pharmacy.

Defendants contend that the mistake in filling the prescription did not result from negligence and that, even if there was negligence, the proximate cause of the resulting unfortunate occurrence was the contributory negligence of plaintiff himself in not noticing that the box in which the tablets were contained bore the inscription "for external use only" and in not noticing, also, that the tablets themselves were stamped on one side with the word "poison" and on the other with the familiar skull and cross-bones.

In the district court there was judgment for plaintiff for $350. Maintaining that the amount of the award is insufficient, plaintiff has appealed, and defendant has answered the appeal praying for a reversal of the judgment and for the dismissal of the suit.

The principal contention of defendant is that the error resulted from the fact that the physician used the word "tabletae," instead of "pilulae" in preparing the prescription order. It is practically admitted that the remaining Latin words used, when interpreted, mean "compound cathartic," but it is argued that compound cathartic is customarily compounded in pill form and not in tablet form and that, when the pharmacist saw the word "tabletae," or "tablets," she was justified in assuming that it was not compound cathartic "pills" that the physician intended. She, the pharmacist, states that bichloride of mercury tablets and compound cathartic pills contain very much the same ingredients, except that the former contain a much larger quantity of mercury and that the two are so similar that she was justified in assuming, from the use of the word "tabletae," that the physician intended the one which is generally prepared in tablet form and not the one which is usually found in pill form.

There seems to be no doubt whatever that the words used by the physician meant "compound cathartic" and not "bichloride of mercury" and there is also no doubt that compound cathartic is merely a rather potent purgative, whereas bichloride of mercury is a deadly poison. That the said pharmacist, or some one connected with the establishment, realized the error, is

evidenced by the fact that apparently an attempt was made to destroy the prescription blank when it was discovered that bichloride of mercury had been furnished instead of compound cathartic.

■ In view of the dangerous nature of the tablets which were furnished, we think that even if there was justification for the error which was made, there was extreme negligence in delivering the deadly poison in a container which did not on its face show the dangerous character of the contents. In section 7 of Act No. 66 of 1888 it is provided:

" * * * That all pharmacists, druggists or apothecaries, shall label all bottles, vials, jars, boxes, parcels, packages, or other receptacles, or coverings, or wrappings of drugs, medicines or chemicals sold or dispensed by them, with a label in legible writing or printed letters, giving the name of the proprietor of the store, the name of the physician prescribing, or shop and the place of sale of said drug, medicine or chemical; and in case the medicine, drug or chemical be of a nature poisonous to the human system or to animals, said label shall have printed thereon a skull and cross bones, with the word 'Poison' in large, heavy lettering."

■ On the container, which was a small pasteboard box, there was nothing to show that the contents were in any way poisonous except the printed words "for external use only." There was no word "poison," there was no facsimile of the familiar skull and cross-bones, and, in fact, there was typewritten, in accordance with the doctor's instructions, "two at bed time, as directed," which directions would ordinarily be taken to mean that two should be taken internally, or, in other words, should be swallowed. In view of the fact that plaintiff had been instructed by the physician to take two internally, we do not believe that it can be said that he was negligent in not noticing the words "for external use only," or, if he did notice them, in not assuming, since they were printed on the regular label of the pharmacist, that the doctor's instructions, which were in typewritten form, were intended to be followed rather than the general warning in printed form, "for external use only."

Defendants point, also, to the word "poison" printed on each of the tablets and to the skull and cross-bones, also printed on each of them, and they maintain that, in view of these warnings, it was negligence for plaintiff to take the said tablets internally. But the tablets are very small, are of a bluish gray color, and the warnings to which defendants point might well be overlooked by any one who had been instructed to take the pills or tablets internally. We do not mean to say that the printing of the word "poison" on each tablet and the printing of the skull and cross-bones might not, in many instances, serve a useful purpose, but we do say that, in view of the statute of 1888 and in view of the rather small size of the tablets on which the warnings were printed, it was negligence on the part of the pharmacist to fail to plainly mark the container with such warnings as would have been readily noticed.

■ The measure of the obligation of a pharmacist or druggist who dispenses poisons is set forth by the Supreme Court of Louisiana in Trumbaturi v. Katz & Besthoff, Ltd., 180 La. 915, 158 So. 16, 19. It is true that the facts of that case bear only slight resemblance to those found here. Still, there is involved here, as there was there, a poisonous drug, and, in discussing the duty of druggists to use extreme care in dealing with such drugs, the court said:

" 'In the discharge of their functions, druggists and apothecaries, persons dealing in drugs and medicines. should be required not only to be skilful, but also exceedingly cautious and prudent, in view of the terrific consequences which may attend, as they have not unfrequently in the past, the least inattention on their part. Cooley on Torts, pp. 75, 76; 648–9.

" 'All persons who deal with deadly poisons are held to a strict accountability for their use. The highest degree of care known among practical men must be used to prevent injury from the use of such poisons. A druggist is undoubtedly held to a special degree of responsibility, for the erroneous use of poisons, corresponding with his superior knowledge of the business. Thomas v. Winchester, 6 N.Y. 397, 57 Am.Dec. 455; Fleet v. Hollenkemp, 13 B.Mon. (Ky.) 219, 56 Am.Dec. 563; Shearman and Redfield on Negligence, § 592.'

"In the case of Ohio County Drug Co. v. Flora Howard, 201 Ky. 346, 256 S.W. 705, 31 A.L.R. 1355, it was held that a druggist is bound to exercise the highest degree of care in dispensing poisonous drugs.

"In 9 R. C. L. 704 § 11, after stating that druggists must be vigilant and pru-

dent in dispensing drugs, and after stating the degree of care required, the reason why they should be prudent and careful is given as follows:

" 'For people trust not merely their health but their lives to the knowledge, care and prudence of druggists, and in many cases, a slight want of care is liable to prove fatal to some one. It is therefore proper and reasonable that the care required shall be proportional to the danger involved.'

"The same rule is expressed in almost the identical language in 19 Corpus Juris, 778, § 36."

Counsel for defendants points to certain earlier decisions of the courts of this state and contends that though, in those earlier decisions, it was held that the respective druggists were responsible for the results of the errors made, there were facts in each case which distinguish it from the case at bar. For instance, he maintains that Walton v. Booth, 34 La.Ann. 913, should be distinguished by reason of the fact that the drug prescribed, "epsom salts," could easily be confused, by reason of its similar appearance, with sulphate of zinc, the drug which was erroneously furnished by the druggist, and that, therefore, it could not be said that the patient was herself at fault in not noticing that the wrong drug had been furnished.

Counsel makes a similar argument concerning the case of McCubbin v. Hastings, 27 La.Ann. 713, in which the physician prescribed "camphor water" and the druggist erroneously furnished spirits of camphor, which, in appearance, is practically identical with camphor water.

There can be no doubt that, if, from the facts before us, we could conclude that plaintiff himself should have discovered the error either from the appearance of the tablets or from warnings on the container, then, regardless of the fault of the pharmacist, there could be no recovery because of the contributory negligence of the said plaintiff. But, as we have said, we cannot reach this conclusion when we consider all of the facts to which we have referred. We cannot find that plaintiff was himself negligent in not noticing the small and insignificant warnings on the tablets themselves and in not noticing that the box bore the inscription "for external use only," in view of the fact that he had been told by his physician to take the tablets internally and in view, also, of the fact that the box contained, as we have said, the typewritten inscription, "two at bed time as directed."

Nor can the case of Martin v. Jonesboro Drug Co., 7 La.App. 262, have any bearing on the question at issue here, for there, though it is true that the box containing the medicine was not inscribed with the word "poison," nor with the skull and cross-bones as required by the statute of 1888, the court held that the failure on the part of the defendant to so label the container, even if that failure was negligence, had no causal connection whatever with the death of the eighteen months old child who obtained and swallowed the medicine. There it was held that the parents of the child were aware of the dangerous nature of the medicine and that they kept it out of reach of their infant son, but that, nevertheless, he in some manner obtained possession of it and swallowed some of it. Obviously, a child of eighteen months could not read and all the warnings which could possibly have been printed on the box would not have served the purpose of preventing the child from swallowing the medicine.

When we examine the record in an effort to determine the extent of plaintiff's injuries, we find much conflicting evidence. He was suffering and had been suffering with other diseases and much of his subsequent disability and pain resulted from the other diseases and could not in any way be said to have been caused by the mistake on the part of the pharmacist. We think, too, that it is quite obvious that our brother of the court below concluded that those other sufferings were not caused or contributed to by the mistake, for, had he concluded that there was causal connection, he must have awarded plaintiff a larger amount than is represented by the judgment appealed from. We thus conclude that only a question of fact is involved on this latter issue and that our brother of the district court found on that question of fact that most of plaintiff's sufferings did not result from the error on the part of the pharmacist. We think that the sufferings which did result from that error are properly compensated for by the amount of the award.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed.

Affirmed.