780 F.2d 1020
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
BILLY WAYNE FOSSETT, Plaintiff-Appellee,
v.
LIGON SPECIALIZED HAULERS, INC., d/b/a LIGON TRANSPORT,
Defendant-Appellant.
 84-5948
 United States Court of Appeals, Sixth Circuit.
 11/22/85
 
 AFFIRMED
 E.D.Ky.
 On Appeal from the United States District Court for the Eastern District of Kentucky
 Before: KENNEDY and MILBURN, Circuit Judges; and COOK,* District Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Defendant appeals from a judgment for plaintiff in this diversity action arising out of a collision between a tractor-trailer and a truck towing a mobile home. The accident occurred in Kentucky on Northbound Interstate Highway 75. Plaintiff Billy Wayne Fossett was towing the mobile home when the tractor-trailer, driven by Robert Grumley, rear-ended plaintiff's vehicle. Plaintiff sued Ligon Specialized Haulers alleging that defendant's agent, servant, and employee operated the truck in a negligent, careless, and reckless manner and that defendant was guilty of gross negligence because it allowed its tractor-trailer upon the highways with defective brakes. The jury returned a verdict for plaintiff in the sum of $277,340.30: $177,340.30 for medical expenses, lost wages, lost future earning power, and mental and physical pain and suffering; and $100,000 in punitive damages. Defendant moved for a judgment notwithstanding the verdict, an alteration or amendment of the judgment, or a new trial. The District Court reduced the judgment by $10,000[1] and denied all other motions.
 
 Facts
 
 2
 Although the facts surrounding the accident are somewhat in dispute, there is agreement on the general chain of events. The parties agree that plaintiff was driving north on I-75 when he came upon a stretch of road where repair work was being done to a bridge. Because of this work, the left lane (of two lanes) had been closed for the approximately three-quarters of a mile immediately preceding the bridge. The construction and lane closure were marked by barricades, a large amber arrow, and signs indicating that the lane was closed and that the speed limit was thirty-five miles per hour. Plaintiff testified that because of the traffic and the narrow passage over the bridge, he was forced to slow to ten miles per hour. The parties agree that, as a result, the two cars immediately behind plaintiff's mobile home came to a complete stop. According to the testimony of Grumley, he was unable to stop in time to avoid hitting the two stopped cars, so he drove into the breakdown lane to the right of the cars ahead of him. Still unable to come to a complete stop, Grumley turned back into the lane of traffic to avoid hitting the bridge guard rail. As a result, he ran into the rear end of plaintiff's mobile home.
 
 Issues
 
 3
 Defendant raises four issues on appeal. First, it asserts that the District Judge failed to give specific instructions on the duty of plaintiff to obey certain Kentucky traffic regulations. Second, defendant challenges the reasonableness of the total amount of damages awarded. Third, it argues that there was insufficient evidence to support the jury's award of punitive damages. Finally, defendant asserts that the documents supporting a finding of responsibility were improperly admitted.[2]
 
 Admissibility of Exhibits
 
 4
 Defendant's last objection is that certain exhibits were improperly admitted, because all exhibits in this case were governed by a pretrial order requiring parties to exchange copies of all exhibits fifteen days prior to trial.[3] These exhibits were offered shortly before the jury was impaneled in response to defendant's explanation to the District Court that defendant was denying any employment or agency relationship with Grumely. Defendant has made no showing that it was prejudiced by this late submission of exhibits. Defendant was obviously familiar with them and did not question their authenticity. A trial court retains the discretion to waive the requirements of its own pretrial order where no prejudice can be shown.
 
 Jury Instructions
 
 5
 Defendant also complains that the District Court improperly refused to give certain jury instructions. These requested instructions were that Kentucky traffic regulations require vehicles in tow to have certain warning lights and that Kentucky law also requires motorists to keep a lookout to the rear, especially when slowing to a near stop. Defendant sought these instructions to support its theory of contributory negligence.
 
 
 6
 Defendant's post-trial motions only alleged error in failure to include the 'lookout to the rear' instruction. The District Court found no error had been committed because there was no evidence in the case that would indicate that failure to maintain a lookout to the rear was a substantial factor in causing the accident. The only testimony on this issue was plaintiff's, and he stated that he had no choice but to slow down due to construction. Defendant's theory that the jury might have found that a look to the rear would have discouraged plaintiff from slowing down is quite implausible in light of the fact that the two cars that plaintiff would have seen behind him did come to a stop. Grumley swerved around these vehicles and hit plaintiff from the breakdown lane. Furthermore, as the District Judge noted, the jury received general instructions about a duty to exercise ordinary care to avoid collision with other vehicles.
 
 
 7
 Defendant's complaint about the lack of instructions on warning lights may be rejected for the same reasons. First, the judge instructed the jury of Fossett's duty
 
 
 8
 [n]ot to stop or suddenly decrease the speed of his tractor-trailer without first giving to the operator of any vehicle immediately following to the rear, if he had reasonable opportunity to do so, a signal of his intention.
 
 
 9
 In addition, whether the lights referred to by defendant are brake lights or side lights, see K.R.S. 189.050 & 189.060, there was no evidence that failure to have them (assuming the jury believed Grumley's testimony on this point) was a substantial factor in causing the accident. With respect to brake lights, the two vehicles immediately behind the mobile home stopped in time. Grumley's inability to stop was in no way related to Fossett's signaling. With respect to warning lights, there is no allegation or evidence that the mobile home was not visible when this daytime collision occurred. Indeed Grumley admitted that he realized that the mobile home was coming to a stop as quickly as it did. The failure to have additional lights or to keep a lookout to the rear was not a proximate cause of the accident as a matter of law.
 
 Excessiveness of Verdict
 
 10
 Defendant also contends that the jury verdict was excessive. Under Kentucky law the standard for whether a verdict is excessive is whether it is 'grossly disproportionate as to the measure of damages.' Wilson v. Redken Laboratories, Inc., 562 S.W.2d 633 (Ky. 1978). The District Court found that, drawing inferences most favorable to the jury's verdict, the award was not excessive. Defendant's brief focuses on the amount awarded for permanent impairment of future earning power--$75,000. Defendant points to evidence that plaintiff had a prior permanent disability of twenty percent, and that the accident itself only disabled him five percent. However, the twenty percent disability was never established by way of evidence at trial, nor was there proof that the prior disability was permanent. Plaintiff contends that if one takes the difference between plaintiff's prior salary (at a job he cannot now perform) and his present salary, and multiplies that by his expected working years, the resulting figure is $84,000. Defendant's citations to other cases do not compel a reversal. There is no evidence that the jury's verdict was an attempt to punish defendant, see Field Packing Co. v. Denham, 342 S.W.2d 524, 527 (Ky. 1961) (overturning a $50,000 award for a neck injury where the degree of disability was dubious and there was no evidence of permanence), especially when the jury had an opportunity to award punitive damages, and did so.
 
 Punitive Damages
 
 11
 Finally, defendant challenges the sufficiency of the evidence for awarding punitive damages. The underlying factual basis for those damages was a statement allegedly made by Grumley (although at trial he denied making the statement). According to the testimony of Terry Barnes, who was driving behind the mobile home, and Fossett, when Grumley got out of his tractor-trailer, after the accident, he threw his hat on the ground and said he was taking the truck to Lexington to have the brakes repaired and that he had been 'telling them for months' that the truck 'didn't have any brakes on it.' (R. 46 & 73). This was the evidence upon which the jury was entitled to award punitive damages. The judge instructed the jury as follows:
 
 
 12
 If you find for the plaintiff and are further satisfied from the evidence that the accident was caused by gross negligence on the part of the defendant or its driver, you may in your discretion award punitive damages against the defendant in addition to the damages authorized under these instructions. But such award of punitive damages shall not exceed one hundred thousand dollars, the amount demanded in the complaint for that item. If you award punitive damages, you will state the amount separately.
 
 
 13
 . . . Gross negligence, as used in these instructions, means a wanton or reckless disregard for the lives and sefety of other persons, including the plaintiff.
 
 
 14
 There has been some evidence in the case that the tractor and trailer driven by Robert Grumley was either owned or operated by Ledo Trucking Company or Hennepin Trucking Company. However, as that vehicle was under lease to the defendant, Ligon Specialized Haulers Incorporated, which had its identification displayed thereon, under federal law it assumes complete responsibility for the operation of the equipment under lease.
 
 
 15
 Defendant argues that there was insufficient evidence to support a finding that defendant was grossly negligent and that defendant could not be assessed punitive damages for the gross negligence of Grumley.
 
 
 16
 We note initially that if defendant is wrong on either of his arguments, the award of punitive damages must be upheld. The interrogatory to the jury on this issue reads: 'Do you find that the accident was caused by gross negligence on the part of the defendant or Robert Grumley? Answer yes or no.' Hence, by the nature of the interrogatory, we cannot tell whom the jury found to be grossly negligent. Despite this forseeable problem, defendant did not request that the interrogatory be altered so that the jury would be required to state whether it felt defendant, Grumley, or both, were grossly negligent. Defendant's failure to make such a request in this case was not critical, however, because we hold that the award can be affirmed regardless of whom the jury felt was grossly negligent.
 
 
 17
 First, we consider the sufficiency of the evidence to support a finding that defendant was grossly negligent. In reviewing jury verdicts in civil cases to determine whether sufficient evidence supports the judgment, this Court follows the traditional rule that we should view the evidence in the light most favorable to the prevailing party. Calhoun v. Baylor, 646 F.2d 1158, 1160 (6th Cir. 1981). The jury's verdict should be accepted if it is one that could reasonably have been reached. Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir. 1982), cert. denied, 459 U.S. 1171 (1983).[4]
 
 
 18
 Defendant contends that the only evidence the jury could have relied on to find defendant grossly negligent--Grumley's alleged statement that he had been telling 'them' for months that the brakes were defective--is insufficient to show that defendant had knowledge of the defect. In other words, defendant argues that the jury could not have reasonably reached the conclusion that defendant was 'them.' Defendant contends the only permissible inference is that 'them' refers to Grumley's employer--either Hennepin or Ledo.
 
 
 19
 Our ability to resolve this issue is hampered by the fact that the relationship between Grumley and defendant is not clearly established in the record before us. This void is filled, to some extent, by defendant's concession at oral argument that it is not challenging the evidence underlying the District Court's instruction that defendant was liable for the operation of the truck. The jury also heard evidence that the truck displayed defendant's name. It was permissible for the jury to infer, absent evidence to the contrary, that Grumley was acting on behalf of defendant and that, because defendant was responsible for the truck, Grumley complained to it about the brakes. Even if the complaint was to someone else, that individual or entity was Ligon's agent, since Ligon was responsible for the condition of the vehicle.
 
 
 20
 The District Court also permitted the jury to award punitive damages based on the gross negligence of Grumley. The issue presented by such an instruction is whether defendant's liability, as established by the ICC regulations, extends to the grossly negligent acts of the operator of the vehicle. We approach this problem by asking how the liability provisions of the ICC regulations fit with Kentucky law on punitive damages. Kentucky law allows punitive damages to be assessed against an employer for the intentional or grossly negligent acts of his employees, Continental Ins. Co. v. Hancock, 507 S.W.2d 146 (Ky. 1974). Such liability is grounded upon the maxim of respondeat superior. The Court of Appeals of Kentucky has held that a principal's liability for the torts of his agent, which is also based on the doctrine of respondeat superior, is coextensive with a master's liability for his servant. Wolford v. Scott Nickels Bus Co., 257 S.W.2d 594, 595 (Ky. 1953). Thus, since the ICC imposes a liability on lessees, for the actions of those operating their leased vehicles, that makes those operators the functional equivalent of agents of the lessees, punitive damages may be imposed on the lessee for the gross negligence of the operator of the leased vehicle.
 
 
 21
 Our holding with respect to punitive damages is consistent with the purposes of Kentucky's rule allowing punitive damages to be assessed against employers and principals. The rule is based, at least in part, on the assumption that employers and principals can exercise some degree of control over the tortfeasors. See Smith's Admx. v. Middleton, 112 Ky. 588, 596, 66 S.W. 388 (1902). The ICC regulations require the lessee to accept exclusive possession, control, and use of the equipment for the duration of the lease and to assume complete responsibility for the operation of the equipment. This extends to the equipment's maintenance. Cape Air Freight, Inc. v. United States, 586 F.2d 170, 181 (10th Cir. 1978); Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F.2d 710, 713 (5th Cir. 1972). Punitive damages would serve to punish the lessee for failing to maintain such control over the equipment. Similarly, our holding furthers the purpose of the Kentucky rule by preventing the lessee from escaping his legal responsibility for the operation and maintenance of the equipment. A contrary holding would encourage the lessee to conduct his business through 'financially irresponsible agents,' because if those agents injured others by willful acts or gross negligence, the lessee and his business 'would not be hurt, so far as direct punishment was involved.' Smith's Admx., 112 Ky. at 596.[5]
 
 
 22
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Julian Abele Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This reduction was required by the Kentucky Motor Vehicles Reparations Act, K.R.S. 304.39-110, because plaintiff was not properly insured
 
 
 [2]
 Defendant raised in its brief a challenge to the sufficiency of the evidence establishing its responsibility for the actions of Grumley. Defendant maintained that because it did not employ Grumley or own the tractor-trailer driven by him it was not liable for his actions. The District Court had ruled that defendant was responsible based on Interstate Commerce Commission regulations that require lessees of vehicles subject to ICC control to assume the responsibility for the operation of the vehicle for the duration of the lease. 49 C.F.R. Sec. 1057.12. At oral argument, defendant abandoned its claim that there was insufficient evidence to show that it was liable based on the ICC regulations
 Defendant also asserted at oral argument that the report prepared by the state trooper who investigated the accident was, under several theories, improperly admitted. In its brief, however, defendant challenged the report's admissibility only on the basis that it was not provided to defendant before trial, in accordance with a pretrial order of the District Court. For the reasons stated infra we decline to reverse the District Court on that basis.
 
 
 [3]
 The exhibits at issue here are three ICC certificates authorizing defendant to engage in transportation as a common carrier by motor vehicle, a certified copy of a motor vehicle registration issued to Ligon Specialized Haulers, Inc., and the police report referred to supra
 
 
 [4]
 Ordinarily, the district court is afforded broad discretion in ruling on new trial motions, and reversal may be predicated only on an abuse of discretion. Bruner, 684 F.2d at 425. In this case, such deference is not appropriate, because the trial court did not decide if there was sufficient evidence that defendant itself was grossly negligent. Instead, the District Court found that since defendant was vicariously liable for the gross negligence of its agent, and there was sufficient evidence that Grumley was grossly negligent, such a determination was unnecessary
 
 
 [5]
 Because defendant has abandoned its claim that there was insufficient evidence to hold it liable, as lessee, for the actions of Grumley, we need not decide the current force of our decision in Wilcox v. Transamerican Freight Lines, 371 F.2d 403 (6th Cir.), cert. denied, 387 U.S. 931 (1967), in light of subsequent changes in the ICC regulations. In Wilcox, we held that 'the ICC Regulations do not impose a liability on a carrier using leased equipment greater than that when operating its own equipment.' Id. at 404. Thus, the lessee was not liable for damages caused while the operator was on a mission of his own. Other circuits have more recently interpreted the ICC regulations more broadly with respect to the issue of liability. See, e.g., Rodriguez v. Ager, 705 F.2d 1229 (10th Cir. 1983); Carolina Casualty Insurance Co. v. Insurance Co. of North America, 595 F.2d 128 (3d Cir. 1979); Wellman v. Liberty Mutual Insurance Co., 496 F.2d 131 (8th Cir. 1974); Proctor v. Colonial Refrigerated Transportation, Inc., 494 F.2d 89 (4th Cir. 1974); Simmons v. King, 478 F.2d 857 (5th Cir. 1973). We note both that there was no evidence here that Grumley was on a mission of his own and that the trailer was leaded