430 So.2d 104 (1983)
Alex CAZES, Widower of Mary Cazes, Laura Cazes Beadle and Alma Cazes Michel
v.
J. RAISINGER, His Employer, Jack Eckerd Corporation d/b/a Eckerd Drug Store No. 523 and Their Insurance Carrier, the Travelers Indemnity Company.
No. 82-CA-71.
Court of Appeal of Louisiana, Fifth Circuit.
March 8, 1983.
Rehearing Denied May 18, 1983.
Daniel E. Becnel, Jr., Reserve, for Alex Cazes, et al., plaintiffs-appellees.
William A. Norfolk, Taylor, Porter, Brooks & Phillips, Baton Rouge, for J. Raisinger, et al., defendants-appellants.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
BOUTALL, Judge.
This suit arises from the alleged negligent mislabeling of a prescription by a pharmacist. The patient for whom the medication was prescribed became ill and died of congestive heart failure several months later. From a judgment in favor of the plaintiffs in a wrongful death action the defendants have appealed.
Mrs. Cazes, a 71-year-old resident of Reserve, Louisiana, had been chronically ill with heart and lung problems and with diabetes for several years. She entered East Jefferson Hospital on July 30, 1980 with difficulty breathing. Dr. Methee Tontiplaphol examined her in the emergency room and determined that she was suffering from acute pulmonary edema and also that she had been without her regular heart medicine and diabetes medicine for two days. He had her admitted to the hospital for treatment and discharged her on August 2.
Dr. Tontiplaphol provided her at time of discharge with a prescription for Lanoxin, a form of digitalis, which she had been taking regularly at least since 1979. On August 5, 1980 she returned to the emergency room with symptoms of an overdose of Lanoxin. It was discovered by Dr. Tontiplaphol that she had taken four pills a day rather than the one pill he had prescribed. An Eckerd Drugs prescription label from the medicine bottle was found, with typed instructions *105 reading, "One tablet four times a day." After treatment in the emergency room Dr. Tontiplaphol sent Mrs. Cazes home with instructions to wait two days, then resume the Lanoxin but take only one pill each morning.
At the suggestion of counsel for the plaintiffs, Mrs. Cazes consulted Dr. Christy Montegut periodically for "evaluation and follow-up" from August 22 through December, 1980, being hospitalized by him for congestive heart failure from December 22 through 24. Counsel also referred Mrs. Cazes to a psychiatrist for two sessions, August 25 and September 3, 1980, because she had become afraid to take her medicine. On January 4, 1981, Mrs. Cazes entered East Jefferson with congestive heart failure and acute anteroseptal myocardial infarction, returned home January 14 but re-entered the hospital the next day, and expired on January 16, 1981. Her former physician, Dr. Greenberg, attended her from January 4 until her death. The death certificate, signed by Dr. Greenberg, showed the immediate cause of death as acute myocardial infarction, as a consequence of coronary artery disease and chronic pulmonary disease. An autopsy was not performed.
Mr. and Mrs. Cazes filed suit for damages against J. Raisinger, the pharmacist who filled the prescription, and Jack Eckerd Corporation, and their insurer, Travelers Indemnity Company, on December 11, 1980. After Mrs. Cazes' death the petition was amended to substitute Mrs. Cazes' three surviving children for her as plaintiffs. The amended petition alleged that she died as a result of an irregular heartbeat caused by the overdose of Lanoxin which aggravated a pre-existing heart and circulatory condition.
Additionally plaintiffs amended the suit to institute an action for their own damages for the death of their mother/spouse. C.C. art. 2315.
The court rendered judgment in favor of the plaintiffs, and against all defendants, awarding each of the four plaintiffs $10,000 general damages in survivorship and $10,000 general damages for wrongful death, plus any special damages incurred in either situation, with legal interest from date of judicial demand and costs. This appeal followed.
In his reasons for judgment, the trial court adopted the findings of fact and legal conclusions set forth in the plaintiff's post trial memorandum. The issues before this court are whether the record supports the finding of a causal connection between the overdose of Lanoxin and Mrs. Cazes' death and whether the amount of the award was in excess of the discretion allowed to the trial judge.
The records of East Jefferson Hospital were placed in evidence and stipulated to by the plaintiffs and defendant. The plaintiffs introduced into the record the depositions of two treating physicians, Doctors Tontiplaphol and Montegut, in lieu of their live testimony and presented as witnesses the widower, Mr. Cazes, and the Cazes's two daughters. The plaintiffs' testimony rather amazingly is that Mrs. Cazes had no heart problems before the incident and sheds no light on the issues before us. The defendants called Dr. Joe Milton McCurdy, who was accepted by the court as an expert in the field of internal medicine.
The East Jefferson Hospital records reveal the following admissions:
November 13-16, 1979, for removal of a cataract. Dr. K.G. Pinter, the consulting internist who examined Mrs. Cazes, stated in his report that her referring physician from Lutcher gave a history of pulmonary emphysema, diabetes, and arteriosclerotic heart disease, and of a hospitalization in the spring of 1979 for acute congestive heart failure. He further reported that at the time of her admission she was taking 0.25 mg. of Lanoxin daily. Among other findings his examination revealed:
"... somewhat enlarged heart to the left with harsh, blowing systolic murmur in the right and left sternal border with a maximum intensity over the apex...."
January 9-16, 1980, for acute and chronic pulmonary disease and pneumonitis. The *106 treating physician was Dr. Samuel Greenberg.
July 30August 2, 1980, for acute pulmonary edema, as described above.
August 5, 1980, emergency room treatment only for digitalis toxicity, as described above.
December 22-24, 1980, for a sudden acute episode of shortness of breath, which Dr. Christy Montegut attributed to "aortic stenosis with acute decompensation."
January 4-14, 1981, and January 15-16, 1981, for myocardial infarction and congestive heart failure which resulted in death, as described above; treated by Dr. Samuel Greenberg.
None of the three medical witnesses was willing to state unreservedly that the Lanoxin overdose caused Mrs. Cazes's death by disrupting the heart rhythm, thereby aggravating her previously existing heart condition.
Dr. Montegut's deposition was the most favorable to the plaintiffs. He stated that medical literature reports that Lanoxin can produce lasting effects even after the drug is discontinued, but that it is often times speculative. The effect he noted was that some patients taking Lanoxin, when discontinued, still had heart function as well as if continued on Lanoxin. He stated the usual effect of an overdose of Lanoxin only lasts 2 or 3 days and at the time of his examination of Mrs. Cazes on September 19, 1980 she exhibited no signs or symptoms he would attribute to the excessive dose of Lanoxin. Consistent with that he stated that Mrs. Cazes needed treatment regardless of the Lanoxin poisoning, that when she first saw him he felt he was treating both things and then with time it was basically the underlying heart problem. After stating the following in response to a question posed by plaintiffs' attorney:
"Q. Can Lanoxin poisoning have a permanent effect on a heart condition that could ultimately lead to a worsening of an already aggravated heart condition?
"Mr. Norfolk: The same objection on the basis previously stated and that is that the Doctor has not been qualified in the area which would permit him to give such an opinion.
"The witness: Well, it's speculation on that issue, and I really don't know for sure."
he was given a question of choice which he answered as follows:
"By Mr. Becnel: Q. Would it be more probable that the Lanoxin poisoning episode accelerated her death, than would have happened under normal conditions had that not occurred?
"Mr. Norfolk: Same objections for the same reasons.
"The witness: I think it was more probable that it did hasten her death."
Dr. Tontiplaphol stated in his deposition that in his experience the effects of a Lanoxin overdose disappear in two or three days. When asked whether he believed there was any relationship between Mrs. Cazes' overdose and her later death, he replied, "I don't think so." He also remarked that her physical condition on August 5, 1980, was the same as when she was discharged on August 2, aside from the nausea and weakness caused by the Lanoxin overdose.
The witness for the defense was Dr. Joe Milton McCurdy, a Board certified specialist in internal medicine and a former professor at the medical schools of both Tulane and L.S.U. He had practiced internal medicine for more than twenty-five years, and testified that about 75% of his patients had heart disease. He had not seen Mrs. Cazes, but reviewed all the medical records. He testified that from his reading of the records of the Lanoxin overdose he would have expected the symptoms to disappear in about two days. As to whether Lanoxin produces lasting effects on the heart muscle, he stated that he had personally researched the subject:
"I have no knowledge of any permanent effects and I have been unable to find any documentation anywhere if there is any permanent effect of Lanoxin on the heart muscle."
*107 Appellant asks us to consider that Dr. Greenberg, Mrs. Cazes' treating physician initially during her illness and at her death, was not called as a witness by plaintiffs and to presume that his testimony would be adverse to plaintiffs. He was equally available to defendant and no presumption can arise from his absence.
We find that the record fails to support a judgment in favor of the plaintiffs for the wrongful death of Mrs. Cazes as a result of Lanoxin poisoning and the trial judge was manifestly erroneous in so holding. The deposition of Dr. Montegut shows the speculative nature of his opinion and it is overcome by the deposition and testimony of the other two doctors. However, the record does indicate that Mrs. Cazes suffered an adverse reaction that was due to the negligence of the pharmacist. The original prescription of Dr. Tontiplaphol and the Eckerd label were both placed in evidence. The prescription clearly indicated a dosage of one tablet each morning, while the label read, "One tablet four times a day."
In the Revised Statutes governing pharmacies, the following requirement regarding the labeling of prescriptions is found at Chapter 37, Section 1195:
"B. All receptacles containing compounded or filled prescriptions shall bear a label showing the prescription number, the name of the person actually and personally filling, compounding or dispensing the prescription, the directions for its use internally or externally, as specified by the prescriber, the date of its compounding or filling, and the name of the store or the proprietor thereof." [Emphasis supplied.]
Pharmacists are held to a high degree of care, as stated in Trumbaturi v. Katz & Besthoff, 180 La. 915, 158 So. 16 (La.1934) at 19, quoting from Walton et al v. Booth, 34 La.Ann. 913:
"`In the discharge of their functions, druggists and apothecaries, persons dealing in drugs and medicines, should be required not only to be skilful, but also exceedingly cautious and prudent, in view of the terrific consequences which may attend, as they have not unfrequently in the past, the least inattention on their part. Cooley on Torts, pp. 75, 76; 648-9."'
The same quotation is found in Marigny v. Dejoie, 172 So. 808 (La.App.1937). In that case the pharmacy was held for negligently filling a prescription with a medication other than that prescribed. In Davis v. Katz & Besthoff, Inc., 333 So.2d 698 (La.App. 4th Cir.1976), the court awarded damages to a customer who was given another person's prescription bottle in a bag labeled with her own name and that of her physician. The plaintiff was not barred from recovery for the ill effects of the medicine by contributory negligence in failing to check the bottle.
We find that while the record supports an award of survivorship damages, we would limit the plaintiff's recovery to an award for the pain and suffering attributable to the Lanoxin overdose but not the general worsening of her pre-existing heart disease. The Lanoxin toxicity caused Mrs. Cazes to become weak and she fainted, resulting in her being brought to the hospital emergency room. She suffered from anorexia, nausea, vomiting and diarrhea, and had visual disturbances. She exhibited some anxiety over the medication and had difficulty adjusting to the prescribed dosage, requiring her to seek psychiatric help as well as medical help.
The appellate courts have constitutional authority to review and render quantum awards where the record reveals that the trial court abused its discretion in making an award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), rehearing denied January 21, 1977. Coco goes on to specify that the appellate court can disturb an award:
"... only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court...." [Citations omitted.] Id. at 335.
*108 The trial court made an award totaling $40,000 for the survivorship action plus special damages. In view of our finding of no causation of death, that award must be reduced. Appellant refers us to the award of $4,500 to the plaintiff in Davis v. Katz & Besthoff, Inc., supra, for ill effects that were of about the same duration and were characterized by nausea and weakness. The court of appeal found the amount of the award to be somewhat high but not unreasonable. We find that an award of $7,500 in general damages is appropriate in this case.
Accordingly, we amend and recast the judgment and order that there be judgment in favor of the plaintiff Alex Cazes, widower of Mary Cazes, and of plaintiffs Wallace Cazes, Laura Cazes Beadle, and Alma Cazes Michel, and against the defendants, J. Raisinger, his employer, Jack Eckerd Corp. d/b/a Jack Eckerd Drug Store No. 523, and their insurance carrier, The Travelers Indemnity Co., in the amount of $7,500 general damages in survivorship, and special damages for which proof has been offered in the amount of $370, with legal interest from date of judicial demand until paid and for all costs of these proceedings.
JUDGMENT AMENDED AND RECAST.